*N. C. Berry,* for the appellee.
*L. M. Child,* for the appellant.

JONATHAN FRENCH *vs.* OLD SOUTH SOCIETY IN BOSTON.

A condition, prescribed by a by-law, in the deeds of pews by an incorporated religious society in Boston, which owns its meeting-house in fee simple and is composed exclusively of the successive pewholders, that the grantee shall forfeit the pew to the society if he shall leave the meeting-house without first offering it to them for a certain price, is not repugnant to the grant, nor contrary to the rule against perpetuities, but valid; and if § 6 of the Gen. Sts. *c.* 30, (Rev. Sts. *c.* 20, § 4,) does not apply to the society, it is a breach of the condition, if, without making such an offer, he ceases to worship with the society, and to attend any of its meetings, or act therein, and to regard himself as a member of it, and connects himself with another religious society.

The provision of the Rev. Sts. *c.* 20, § 4, (Gen. Sts. *c.* 30, § 6,) that persons belonging to a religious society shall be deemed to be members until they file with the clerk a written notice declaring the dissolution of their membership, did not apply to an association of proprietors of pews in a meeting-house in Boston, upon their incorporation in 1845 " subject to all the duties, liabilities and restrictions " contained in the Rev. Sts. *c.* 20, " so far as the same are applicable to this corporation," after having been so organized, for more than a hundred and fifty years, according to the usages and law existing in Boston, that membership of the society ceased with the ceasing to hold a pew, and that the tenure of the pews was on condition that the respective proprietors should forfeit them to the society if they should leave the meeting-house without first offering them to the society for a certain price.

CONTRACT to recover twenty-five dollars collected by the defendants from William J. Niles for rent of a pew in the Old South Meeting-house in Boston, for the months of December 1868, and January, February and March 1869. Writ dated June 8, 1869.

The facts admitted in the pleadings showed that the " Proprietors of pews in the Old South Meeting-house in Boston " were incorporated by the St. of 1845, *c.* 229,* " with all the powers

* Section 2 of the St. of 1845, *c.* 229, provides that " said corporation shall be deemed and taken to be the successors of said proprietors, and are hereby

and privileges, and subject to all the duties, liabilities and restrictions " contained in the Rev. Sts. *cc.* 20, 44, " so far as the same are applicable to this corporation," under the name of " The Old South Church in Boston," which was changed by the St. of 1859, *c.* 88, to the " Old South Society in Boston ; " that, for a hundred and fifty years before they were thus incorporated, the proprietors of pews in this meeting-house had owned in fee simple the meeting-house with the land under and adjoining it, and other real estate, and had been " duly organized according to the usages and law existing in the early history of the city of Boston, said proprietors consisting of the holders of pews in said meeting-house under deeds executed according to regulations then existing, and a duly organized congregational church during all said time had existed in connection with said proprietors, settling and maintaining pastors of said church, and maintaining religious worship in said meeting-house, and taxing said pews to pay the expenses of the same, and the voters in said organization were only the owners of pews ; " and that " the plaintiff and those under whom he claims were, and for many years have been, the owners of pew No. 76 in said meeting-house, under a deed " in form as follows :

" To all people to whom these presents shall come, Know ye, that the Old South Society in Boston, a corporation established by law, in consideration of the sum of          dollars, paid to said corporation, by      , of          , the receipt whereof is hereby acknowledged, doth hereby assign to the said      the pew numbered
      in the meeting-house situated at the corner of Washington and Milk Streets in the city of Boston.   To have, hold and enjoy

---

authorized to take and hold to the use of said corporation and its successors and assigns, in fee simple, all and singular that parcel of real estate situate on Milk, Washington and Spring Streets, in said Boston, now known as the estate belonging to the Old South Church and Society, whereon the meeting-house and other buildings stand, for the support of public worship, for parochial and charitable purposes, in this Commonwealth, and for paying the debts of said corporation ; and all contracts and liabilities made and incurred by said proprietors, or for which they are in any manner liable, shall be binding upon said corporation and be kept and performed by it."

the same, to him and his legal representatives, upon the condi
tions following, viz. : That he and they shall well and truly pay
or cause to be paid, to the said corporation, so long as he or they
shall hold the said pew, the sum of        dollars,        cents, quar-
ter-yearly, and whatever other sums shall be assessed on the said
pew, for the support of public worship in the said house ; and
towards such charges and expenses as from time to time may be
voted to be defrayed. But if the said        , or his legal repre-
sentatives, shall neglect, during twelve months, to pay the sums
and assessments aforesaid to the said corporation or its treasurer,
the said pew shall be forfeited to said corporation, and be sold
pursuant to the by-laws thereof. And upon the further condition,
that if the said        , or his legal representatives, shall leave the
said meeting-house, he shall first offer the said pew to the treas-
urer, for the time being, of said corporation, for the aforesaid sum
of        dollars, and if he shall, for the space of thirty days, re-
fuse to pay the same, after deducting all arrears that shall then
be due, it shall then be lawful for the said        , or his legal rep-
resentatives, after paying such arrears, to sell the said pew to any
one person, and to one person only, upon the same conditions as
are contained in this instrument, and upon no other. But if the
said        , or his legal representatives, upon his or their leaving
the said meeting-house, shall neglect to offer the said pew as
aforesaid, then he or they shall forfeit the same to the said cor-
poration. And the said        , and his legal representatives, shall
annex his or their name or names, with the number of the pew,
to the money from time to time put into the contribution-box,
that the same may be duly credited. In witness whereof, the
said corporation hath caused these presents to be signed by        ,
its treasurer, to be countersigned by        , its clerk, and its com-
mon seal to be hereto affixed, this        day of        , in the year
of our Lord Eighteen Hundred and        .

"I, the above named        , do hereby freely acknowledge, that
I receive the above mentioned pew, and the conveyance thereof,
upon the conditions aforesaid, and if I, or my legal representa-
tives, shall neglect or refuse to keep or perform all, any, or either
of them, the said pew shall be forfeited to said corporation, as

above expressed. In witness whereof I have hereunto set **my** hand the day and year above mentioned."

The pleadings further showed that " the plaintiff, or those under whom he claimed, continued to occupy the pew until on or about April 1, 1867, when the plaintiff left said meeting-house, and ceased to worship with said society, or to attend any of the meetings of said corporation, or to act therein, and connected himself with another religious society in Boston, and from that time has ceased to regard himself as a member of said society, or to attend religious worship in said meeting-house ; " that before leaving the meeting-house he did not offer, nor has since offered, the pew to the treasurer of the society, but rented it to William J. Niles, who has since occupied it; that on March 12, 1869, while the pew was thus occupied by Niles, the defendants entered and took possession of it, and gave the plaintiff notice that they had done so to enforce the forfeiture of it to them for breach of the condition of his deed, and should thereafter collect rent of Niles, and gave Niles like notice ; and that they did thereafter demand and receive of Niles the rent alleged in the declaration.

At the trial in the superior court, before *Putnam*, J., " no evidence was offered, but it was agreed that the facts stated in the pleadings were true ; " and at the request of the parties the judge " reported to the supreme judicial court the questions of law arising upon said pleadings."

At the argument in this court, in March 1870, the parties produced and referred to a deed bearing date of January 1, 1830, (more than fifteen years before the incorporation of the defendants,) as the deed under which in fact the plaintiff claimed. By this deed " the deacons of the church and congregation " in consideration of one hundred dollars to them paid by the plaintiff, assigned to him the pew numbered 76 in the meeting-house, to have, hold and enjoy, to him and his heirs, upon the condition that he or they should contribute on every Lord's day, or pay to the deacons weekly, thirty-three and one third cents, and " annex his or their name or names, with the number of the pew, to the money from time to time put into the contribution-box, that the clerk or deacons of the society may credit the said pew for the

same," and upon the further condition " that if the said Jonathan French, or his heirs, should leave the said meeting-house, he shall first offer the said pew to the deacons for the time being, for the aforesaid sum of one hundred dollars, which if they for the space of thirty days refuse to pay, after deducting all arrears that shall then be due, it shall then be lawful for the said Jonathan French or his heirs, on paying such arrears, to sell the said pew to any one person, and to one person only, upon the same conditions as are contained in this instrument, and upon no other, but if the said Jonathan French or his heirs, upon his or their leaving the said meeting-house, should neglect to offer the said pew as aforesaid, then he or they shall forfeit the same to the deacons and committee for the time being, for the use of the proprietors aforesaid ; " and subjoined to this assignment was an acknowledgment, signed by the plaintiff, that " I receive the above mentioned pew upon the conditions aforesaid, and if I or my heirs shall neglect performing all or any of them, upon such neglect it shall be lawful for the deacons and committee for the time being, or the major part of them, to take the said pew as aforesaid and sell the same as above mentioned."

The parties also produced and referred to the by-laws of the corporation, the fifth article of which provided that " at all meetings of the corporation every owner of one pew shall be entitled to one vote, and no person shall be entitled to more than one vote, whatever number of pews he may own, and no person shall be allowed to vote by proxy ; " and the eleventh article provided that all deeds of pews should be in the form set forth in the pleadings in this case.

*M. Williams, Jr.*, for the plaintiff.

*L. Child & L. M. Child*, for the defendants.

After the oral argument by the above named counsel, the following written argument was submitted (by permission of the court) by

*S. Bartlett & U. H. Crocker*, for Crocker as a party in another case, having a like interest with the plaintiff. 1. The clause in question is an attempt to limit the effect of an absolute sale and conveyance, for valuable consideration, of personal property so

that, upon the happening of an event obscurely defined in the deed, the seller shall have an opportunity of repurchase at the original price, whatever in the mean while may have been the change in value; and to secure this right by a forfeiture of the estate of the buyer in case he shall fail to offer to the seller the specified opportunity.

2. A condition of this character, engrafted upon an absolute conveyance, whether of real or personal property, and whether by will or deed, is absolutely void, by reason of its repugnance to the estate granted, and because it is an attempt to control and abridge the right of alienation which is inseparably incident to absolute ownership. 1 Jarman on Wills, 810–816. 4 Kent Com. (6th ed.) 131. It is to be noted, that, by this deed, the restraint does not consist merely of the requirement that the property shall be offered to the grantor at cost, but goes further, and requires that, if the grantor shall decline to purchase, the grantee shall only sell to a single person, and this by a conveyance "upon the same conditions;" and under such conditions in a deed from the original grantee, a forfeiture would of course enure to his benefit, and not to that of the original grantor. The assent of the grantee to such a deed, by the acceptance thereof; or even his assent in writing, or under seal; cannot make valid such a condition or limitation. The grant stands unaffected by it. Perhaps such assent, under seal, might be construed to be a covenant by the grantee; but the title would be unaffected by such a covenant. And even if such conditions were not void as repugnant to the grant, it is worthy of consideration whether the title to personal property (which pews in Boston were declared to be, by the St. of 1798, *c.* 42) could ever be defeated by nonperformance by the grantee of a condition subsequent, attempted to be engrafted on the sale. In conveyances of real estate, where all appears of record, subsequent grantees take with notice; but this can rarely be true of sales or transfers of chattels. And it is obvious that the title in the hands of subsequent buyers cannot be affected by forfeitures thus attempted to be created between the original parties. If, then, such conditions do not follow and adhere to the title, they lose the character of conditions, and can at most be construed as covenants between the original parties.

3. Such a condition also violates the rule against perpetuities. The title vested by the conveyance in the grantee is, by force of the conditions, to revert to his grantor on the happening of certain events. The period within which such events may happen is undetermined; they may occur at periods transcending the limit fixed by the rule against perpetuities; and if so, it would seem, upon principle, that the conditions are void, and the estate remains absolute in the hands of the grantee. In Lewis on Perpetuities, 598, 614, 616, it is argued that, even in conveyances of real estate, conditions are not valid, if they may, according to their terms, defeat the grantee's estate after the expiration of the time allowed by the rule against perpetuities. See also 1 Am. Law Review, 265. But even if such conditions may be considered good in conveyances of real estate, either as forming an exception to the rule against perpetuities, or for other reasons, it would seem that they must be bad when applied to personal property. In several particulars, provisions may be made affecting the future title to realty, which cannot be made as to personalty. Thus an estate tail cannot be created in personalty; and the same language, which, if applied to realty, would create such an estate, will give an absolute interest in personalty. So, also, in the case of personal property, a power to sell, given to one who takes a life interest in the property to which the power relates, will render void any limitation over, and give the first taker an absolute estate. A power to sell, however, given to one who takes a life estate in realty, will not render void a common law remainder over. See 2 Kent Com. 352; 4 Ib. 269, 270. If, in personalty, an estate upon condition unlimited as to time of breach can be created, who will be the party entitled to enforce the forfeiture in case of a breach after the death of the original seller? Shall it be his heirs, or his executor? Certainly the validity of such a condition relating to chattels has never been recognized in the courts; and it is not in accordance with the spirit of the times that such a complication should now first be introduced into the law of personal property.

4. As to the forfeiture contemplated in case of neglect to pay taxes or assessments on the pew, the liability, or rather lien, upon

the pew for such assessments, does not grow out of the deed, **but** is fixed by statute. Gen. Sts. *c.* 30, §§ 39, 40. By those sections, and §§ 32, 33, such assessments are to be enforced by sale of the pew, and a restoration is to be made to the pewholder of any surplus arising from the sale. It would seem to be illegal, to disregard the statute and attempt to enforce payment of such assessments by forfeiture of the whole property. Indeed, it appears to be an old and well established rule of law, that a corporation cannot, by a by-law or otherwise, impose a forfeiture upon its members, even for nonpayment of assessments, unless authority to do so is expressly given by its charter, or otherwise by statute. Angell & Ames on Corporations, §§ 360, 362, 363. 2 Kent Com. 296, 297. *In re Long Island Railroad Co.* 19 Wend. 37, 43. *Kirk* v. *Nowill,* 1 T. R. 118, 124.

5. Even if the defendants have power to grant pews on condition, the condition which they have inserted in their deeds is, particularly in its reference to " leaving the meeting-house," so vague and indefinite that a court of law will not enforce it. Chit. Con. (10th Am. ed.) 68. *Clavering* v. *Ellison,* 3 Drewry, 451. *Guthing* v. *Lynn,* 2 B. & Ad. 232.

CHAPMAN, C. J. This case comes before us without evidence, it being agreed that the facts stated in the pleadings are true, and only the questions of law arising upon the pleadings are submitted to the court.

By St. 1845, *c.* 229, the " Proprietors of pews in the Old South Meeting-house " were incorporated by the name of the " Old South Church," their name being changed in 1859 to the " Old South Society in Boston." They had then been organized for more than one hundred and fifty years according to the usages and laws existing in the early history of the city of Boston, and consisted of the holders of pews under deeds executed according to the regulations then existing. The voters in the organization were only the owners of pews ; and they now constitute the corporation, and own the real estate and meeting-house.

The plaintiff and those under whom he claims were for many years the owners of pew No. 76, respecting which this controversy has arisen, and the only material part of it is the condition

referred to in the argument. This condition is, that, "if the said [grantee] or his legal representatives shall leave the said meeting-house, he shall first offer the said pew to the treasurer for the time being, of said corporation, for the aforesaid sum of dollars, and if he shall for the space of thirty days refuse to pay the same, after deducting all arrears that shall then be due, it shall then be lawful for the said [grantee] or his legal representatives, after paying such arrears, to sell the said pew to any one person, and to one person only, upon the same conditions as are contained in this instrument, and upon no other. But if the said [grantee] or his legal representatives, upon his or their leaving the said meeting-house, shall neglect to offer the said pew as aforesaid, then he or they shall forfeit the same to the corporation."

The plaintiff's deed was made in 1830, prior to the act of incorporation. Those deeds were not precisely like the form referred to in the answer, but the condition was substantially the same, and the foregoing is the form to be referred to by agreement of the parties in this case. At the foot of the deed is an agreement of the grantee, assenting to the condition. The form of the condition is established by a by-law. In respect to by-laws of this character, Chief Justice Shaw says, in *Attorney General* v. *Federal Street Meeting-house Proprietors*, 3 Gray, 1, 47, "It is competent for such a society to make such reasonable by-laws and regulations, respecting the sale and purchase of pews, as they think their interests as a religious society may require. And it is usual for such societies to make such regulations in regard to the sale of their pews, and express them in the deeds they issue, as to prevent an indiscriminate sale of pews, and they retain some right to elect and determine whom they will associate with, or rather who may associate with them. Otherwise, if it were free to anybody to purchase pews without restraint, a number of people of another denomination, finding pews low, might purchase them, and become a majority, and thus turn the proper congregation out of their own house." These remarks apply to the Old South Society; for the act of incorporation merely invests the proprietors with corporate powers, leaving them the title to their property; and their by-laws continue in substance the same conditions in their deeds that they had been accustomed to use.

Since April 1867 the plaintiff has ceased to worship with the defendants, or to attend any of their meetings or act therein, and has connected himself with another religious society in Boston. This must be regarded as "leaving the meeting-house" within the terms of the deed. He has neglected to offer his pew to the treasurer, and has rented it to a third person. The defendants have entered for forfeiture, and collected of his tenant the rents for which he brings this action. If the condition contained in the deed is valid, there can be no doubt that his title is forfeited, according to the terms of the condition.

The Gen. Sts. c. 30, § 6, (Rev. Sts. c. 20, § 4,) which provides that "persons belonging to a religious society shall be deemed to be members until they file with the clerk a written notice declaring the dissolution of their membership," is not applicable to a case like this; for that provision relates to religious societies organized in the usual method, and not to organizations like this, whose rights of property would be essentially changed by such a provision. The incorporation of the proprietors by the St. of 1845 only gives them the powers and privileges, and subjects them to the duties, liabilities and restrictions, contained in the 20th and 44th chapters of the Revised Statutes, so far as the same are applicable to this corporation. The General Statutes made no change in this respect, and membership is still dependent, as it has always been, upon the title to pews. ·

The doctrine, that conditions against alienation in a conveyance in fee simple are void, has never been held to be applicable to conveyances of pews, for the reasons stated by Chief Justice Shaw, and cited above. The tenure by which pews are held in this Commonwealth is peculiar.

It is objected that the rule against perpetuities makes the conditions of the plaintiff's deed void. If a perpetuity may be defined as "an estate unalienable though all mankind join in the conveyance, (see *Scatterwood* v. *Edge*, 1 Salk. 229,) or "where, if all that have interest join, yet they cannot bar or pass the estate," (see *Washborn* v. *Downs*, 1 Ch. Cas. 213,) here is no violation of the rule, for the plaintiff and defendants could at any time join in a conveyance of the property. The grantee took an

estate on condition subsequent, and the possibility of reverter remaining in the grantor on breach of the condition is not subject to the rule against perpetuities, even if the pew is held as real estate. *Brattle Square Church* v. *Grant*, 3 Gray, 142.

*Judgment for the defendants.*