(78 South. 71)

STATE v. ELLIS. (3 Div. 319.)

(Supreme Court of Alabama. Feb. 14, 1918.)

1. EQUITY ⟊194—PLEADING — FAILURE TO ANSWER—EFFECT.

Where a bill to restrain an alleged nuisance was not answered, its averments must be considered as confessed.

2. NUISANCE ⟊84—"PUBLIC NUISANCE" — ABATEMENT.

A house of ill fame is a "public nuisance," which may be abated by a court of equity.

[Ed. Note.—For other definitions, see Words and Phrases, First and Second Series, Public Or Common Nuisance.]

3. NUISANCE ⟊82—SUIT BY STATE.

In view of Code 1907, § 5196, providing that a public nuisance must be abated by a process instituted in the name of the state, a court of equity has jurisdiction to abate the nuisance of a disorderly house upon the petition of the state.

4. NUISANCE ⟊84—INJUNCTION—CRIMINAL ACTS.

In determining whether equity has jurisdiction to restrain and prohibit a public nuisance by maintenance of a disorderly house, it is immaterial whether the maintenance is punishable as a crime, since equity ignores its criminality and imposes no punishment.

Appeal from Circuit Court, Montgomery County; Gaston Gunter, Judge.

Suit by the State against Bessie Ellis to restrain a nuisance. From a decree of the circuit court sustaining a demurrer to the bill for want of equity and dissolving the writ of injunction, the State appeals. Reversed, rendered, and remanded.

W. L. Martin, Atty. Gen., and L. E. Brown, Asst. Atty. Gen., for the State. Goodwyn & McIntyre, of Montgomery, for appellee.

SOMERVILLE, J. [1-3] On the state's application for reinstatement of the temporary injunction in this cause pending appeal, the following opinion was rendered by Mr. Justice Gardner, at chambers:

"The bill charges the respondent with maintaining a public nuisance in the city of Montgomery on certain premises on a named street therein, in that the respondent is using the building on such premises for the purpose of a bawdyhouse, a house of prostitution, or a house of ill fame. The bill was amended by the addition of the fifth paragraph alleging that such houses were the source of venereal infection and disease and are a menace to the health of the community. There were also averments as to the large number of troops ordered to be incamped near the city of Montgomery for training purposes, and other such averments in reference thereto which need no specific mention. The bill was not answered, and there, therefore, being no denial of its averments, they must be considered as confessed. The only question, therefore, relates to the equity of the bill. 'It is settled law that a house of ill fame or bawdyhouse is a public nuisance.' Tedescki v. Berger, 150 Ala. 649 [43 South. 960, 11 L. R. A. (N. S.) 1060]. 'A bawdyhouse or house of prostitution is a nuisance per se. * * * The jurisdiction of a court of equity to entertain a bill to abate a nuisance is too well settled in our jurisprudence to admit of question.' Barnett v. Tedescki, 154 Ala. 474 [45 South. 904], also Joyce on Law of Nuisance, sec. 301. 'In regard to public nuisances the jurisdiction of courts of equity seems to be of a very ancient date, and has been distinctly traced back to the reign of Queen Elizabeth. In cases of public nuisances, properly so called, an indictment lies to abate them and punish the offenders, but an information also lies in equity to redress the grievance by way of injunction.' 2 Story's Eq. Jur. 921–923. Some of the underlying reasons for this rule are found stated in section 924 in the above volume of Story on Equity Jurisprudence. 'A court of equity has jurisdiction to restrain existing or threatened public nuisances by injunction at the suit of the Attorney General in England and at the suit of the state or the people of the municipality or some proper office representing the commonwealth in this country.' 4 Pom. Eq. Jur. (3d Ed.) 1349. The right of the state to abate a public nuisance by proceedings in equity was recognized by this court in State v. Mayor and Aldermen of Mobile, 5 Port. 279 [30 Am. Dec. 564], and has never been departed from by any subsequent decision. 'Houses of prostitution are public places. They are places to which all men may resort without invitation, and any houses maintained for the indulgence of vice, and to which all men may resort day or night for indulgence therein, is a public place. These houses are common or public nuisances, their maintenance directly tends to corrupt and debase public morals, to promote vice, and to encourage dissolute and idle habits; and the suppression of nuisances of this character and having this tendency is one of the important duties of the government.' Pon v. Wittman, 147 Cal. 280 [81 Pac. 984, 2 L. R. A. (N. S.) 683].

"A very interesting case involving the right of the state for the welfare of its citizens to injunctive relief against a public exhibit which would tend to degrade the morals of the people

and which was in violation of the laws of the state, and a public nuisance, is that of State ex rel. Crow v. Canty, by the Supreme Court of Missouri, found cited in [207 Mo. 439, 105 S. W. 1078, 15 L. R. A. (N. S.) 747, 123 Am. St. Rep. 393] 13 Ann. Cas. p. 787. It was there held that the state could properly enjoin the exhibition of a bull fight, near the city of St. Louis, calculated to injure and destroy the public morals or to disturb the public peace. Numerous cases are cited in note to that authority in support of same. Among them is Commonwealth v. McGovern, from the Supreme Court of Kentucky found in [116 Ky. 212, 75 S. W. 261] 66 L. R. A. 280, where it was held that the state could enjoin an exhibition of a 'prize fight.' The court, among other things, said: 'If a court of equity has the power to enjoin the use of private property as a nuisance, which is dangerous to the public health, why may it not in like manner enjoin it where it constitutes a nuisance dangerous to the public safety or morals. * * * It may be justified upon the higher ground that the morals and safety of the public are involved and that the public good is of the first consideration.'

"The following cases relate to injunctions against the operation of bawdyhouses: Edison v. Ramsey [146 Ga. 767] 92 S. E. 513; Brindle v. Copeland [145 Ga. 398] 89 S. E. 332; State ex rel. Dow v. Nichols [83 Wash. 676] 145 Pac. 986; Campbell v. Peacock [Tex. Civ. App.] 176 S. W. 774; Ingersoll v. Rousseau, 35 Wash. 92 [76 Pac. 513, 1 Ann. Cas. 35].

"The latter case discusses the question of lack of precedents for injunctions against bawdyhouses, and in this connection says: 'Doubtless there is some evidence that jurisdiction does not exist in a given case to show that it has never been exercised in like cases, but the persuasive force of such evidence is weak or strong, owing to the presence or absence of cases announcing the same or similar principle. * * * Precedents are abundant where equity has interfered by injunction to prevent and abate public nuisances against which there existed the same common-law remedies of indictment and action on the case that existed against the maintenance of a bawdyhouse. It would seem, therefore, that if equity refused to exercise such jurisdiction in case of bawdyhouses, it was for some reason other than for lack of jurisdiction.'

"As previously shown, a bawdyhouse is a public nuisance, and by our own decision the state may, by injunctive proceedings abate a public nuisance. State v. Mayor and Aldermen of Mobile, supra. Indeed, the language of section 5196 of the Code of 1907 clearly indicates the right of the state to abate such public nuisance which reads as follows: 'Generally a public nuisance gives no right of action to any individual, but must be abated by a process instituted in the name of the state.'

"It is settled beyond question that in this state a private individual, suffering injury on account of the operation of such a nuisance, may abate the same by injunction but as the operation of the bawdyhouse is a public nuisance and as the above authorities clearly show the state has the right in its own name to abate public nuisances, I am persuaded that the bill has equity, and the same not being denied, but treated here as confessed, that the preliminary injunction dissolved by order of the court below should be reinstated pending the appeal."

The cause is now before us on appeal from the decree of the circuit court sustaining a demurrer to the bill for want of equity, and dissolving the writ of injunction. Upon a very full consideration of the questions involved, we now approve and adopt the foregoing opinion as the opinion of the court on this appeal.

It is true that the English and American courts of chancery have not always spoken with one voice to the conclusion we here express, and several American courts of very high standing have denied the jurisdiction of chancery to prevent by injunctive writ the maintenance of public nuisances, even at the suit of the state, except for the protection of *property rights,* as, for example, the use of public highways and navigable streams. That view was expressed in the old case of Attorney General v. Utica Ins. Co., 2 Johns. Ch. (N. Y.) 371. It was, however, disapproved in this state 80 years ago, upon a review of many authorities; and, after reviewing the case referred to, it was said:

"If the chancellor intended to be understood according to the literal import of the terms he employs, either he is in error, or else the learned judges and authors whom we have cited have mistaken the law, and with all deference for his judgment, we are disposed to think the former most probable." State v. Mayor, etc., of Mobile, 5 Port. 279, 316 (30 Am. Dec. 564).

In discussing and upholding the jurisdiction in question, Mr. Justice Harlan, speaking for the Supreme Court of the United States, declares:

"The ground of this jurisdiction in cases of purpresture [i. e., encroachments upon public places, either on land or water], as well as of public nuisances, is the ability of courts of equity to give a more speedy, effectual, and permanent remedy than can be had at law. They cannot only prevent nuisances that are threatened, and before irreparable mischief ensues, but arrest or abate those in progress, and, by perpetual injunction, protect the public against them in the future; whereas courts of law can only reach existing nuisances, leaving future acts to be the subject of new prosecutions or proceedings. This is a salutary jurisdiction, *especially where a nuisance affects the health, morals, or safety of the community* (italics ours). Though not frequently exercised, the power undoubtedly exists in courts of equity thus to protect the public against injury." Mugler v. Kansas, 123 U. S. 623, 673, 8 Sup. Ct. 273, 303 (31 L. Ed. 205).

The Supreme Court of Illinois has given studied consideration to the subject in the case of Stead v. Fortner, 255 Ill. 468, 99 N. E. 680, where the authorities are fully reviewed. The conclusion was stated by Cartwright, J., as follows:

"As we have noted above, this court has never regarded a criminal prosecution, which can only dispose of an existing nuisance and cannot prevent a renewal of the nuisance, for which a new prosecution must be brought, as a complete and adequate remedy for a wrong inflicted upon the public. The public authorities have a right to institute the suit where the general public welfare demands it and damages to the public are not susceptible of computation. The maintenance of the public health, morals, safety, and welfare is on a plane above mere pecuniary damage, although not susceptible of measurement in money; and to say that a court of equity may not enjoin a public nuisance because property rights are not involved would be to say that the state is unable to enforce the law or protect its citizens from public wrongs."

[4] It is scarcely necessary to observe that whether the maintenance of a public nuisance is or is not punishable in the law courts as a crime is an immaterial incident so far as the preventive jurisdiction of equity is concerned; for equity ignores its criminality, and visits upon the offender no punishment as for a crime.

It follows that the decree of the circuit court must be reversed and a decree will be here rendered overruling the demurrer to the bill of complaint, and retaining the temporary writ of injunction until the final disposition of the cause.

Reversed, rendered, and remanded.

ANDERSON, C. J., and MAYFIELD and THOMAS, JJ., concur.