178 So. 73

### GRIMES v. STATE.

### 6 Div. 226.

Supreme Court of Alabama.

Nov. 18, 1937.

Rehearing Denied Jan. 13, 1938.

Foster, Rice & Foster, of Tuscaloosa, for petitioner.

A. A. Carmichael, Atty. Gen., and Wm. H. Loeb, Asst. Atty. Gen., for the State.

Peach & Caddell, of Decatur, amici curiae.

BOULDIN, Justice.

The legality of "Bank Nights," at motion-picture theaters, to say nothing of other devices so prevalent at this time, is of such general interest, both to the motion-picture industry and to the public, that this court deems it proper to give a brief but definite statement of the law sustaining the decision of the Court of Appeals now under review.

For a full and clear statement of the plan of operation in the instant case, we refer to the "Statement of Facts" by the Court of Appeals, 178 So. 69.

Our statute (Code 1923, § 4247) declares: "Any person who sets up, carries on, or is concerned in setting up or carrying on any lottery or device of like kind, or any gift enterprises, or any scheme in the nature of a lottery or gift enterprise," is guilty of an offense, and subject to a fine, with cumulative punishment for successive conviction.

This statute is pursuant to a mandate of the State Constitution, first appearing in the Constitution of 1875, and readopted as section 65 of the present Constitution.

The legal definition of a lottery or gift enterprise in the nature of a lottery, denounced by our statute, is fully discussed in Yellow-Stone Kit v. State, 88 Ala. 196, 7 So. 338, 7 L.R.A. 599, 16 Am.St.Rep. 38; Loiseau v. State, 114 Ala. 34, 22 So. 138, 62 Am.St.Rep. 84, and Johnson v. State, 83 Ala. 65, 3 So. 790.

The lust for profit by catering to and commercializing the gambling spirit has given rise to many ingenious devices resulting in very many decisions by the courts dealing with the application of lottery statutes similar to ours.

Since the appearance of bank nights in motion-picture theaters, themselves varying somewhat in detail, numerous cases involving their legality vel non under lottery statutes have given rise to prolonged discussion. The particular plan of operation here involved has been considered by eminent courts quite recently.

For a full review of authorities, English and American, we refer to a series of notes in 109 A.L.R. 709; 103 A.L.R. 866; 57 A.L.R. 424; and 48 A.L.R. 1115.

A special article on "The Legality of Theater Bank Nights" by William N. Hensley, appearing in "The American Lawyer" (published by the American Law Book Company) vol. 1, No. 1, September, 1937, reviews and discusses with much force and reason the authorities to a very recent date.

Without undue elaboration we give the following expression of our views, as best supported by reason and the trend of the best considered cases:

Without dispute a lottery has three elements: (1) A prize, (2) awarded by chance, (3) for a consideration. The presence of the first two elements in bank night operations is without dispute.

Is there a consideration within the spirit and purpose of our lottery laws?

It should be kept in mind that the penal statute is directed to the operator. Is there a consideration moving to him?

The very fact that it is a business enterprise intended to swell the receipts from paid admissions to the theater evidences an intention to garner a profit from the gift enterprise. For practical purposes the measure of the consideration moving to him is the excess of receipts from paid admissions on bank nights, over what they would have been for the entertainment in the absence of the bank night attraction.

In the instant case the matinee receipts, stressed by the Court of Appeals, enters as an additional feature.

We would be definitely understood as holding the presence of this matinee feature, while illustrative, is not a controlling one.

Obviously the increased income above noted must come from paid admissions. Paid for what? Paid for the chance to draw the prize or jack pot. Thus "the hazarding of money with the hope of obtaining by chance a larger sum" is of the essence of the scheme.

To the extent this gambling spirit is aroused in the community, the higher the gambling fever rises, the more successful the enterprise.

It is not of consequence whether either the operator or the patron has figured just how much of the admission charge is paid for the chance. "Gift enterprise" in the nature of a lottery definitely covers a lottery in aid of legitimate business, through colorable gifts, but in fact prizes awarded by chance for a price.

But little need be said touching the fact that every one may register, get his name and number in the hopper. This is only a preliminary step. No prize can come from that. Incidently, the fact that the person registering must go to the theater to register may swell the receipts from admissions from day to day. This should be viewed only as a part of the entire picture.

But what of the fact that everybody may register, and may participate in the drawing by being either in the theater, or on the outside, in position to appear and claim the prize within two minutes? How can it be said patrons on the inside have paid anything for a chance, if they have a like chance without paying?

Some courts have enlarged upon the better chance by being inside the theater, as well as the inconvenience of going to the theater and being in a position of vantage at the appointed moment. Aside from this, it occurs to us the lure of

194

.bank night is the show, and the chance for a prize, as against the chance without the show.

Moreover, the sense of good sportsmanship may exert an influence on the number who put themselves in the position to draw a prize when they have contributed nothing to the common stake which has brought the prize into being.

Theorize as one may, it remains, that looking through form and dealing with reality, the plan is intended to fill the theater, not the lobby outside. The more on the outside, the less the chance of those on the inside. To minimize the one and increase the other is part of the necessary intendment.

The results, the success of the plan in swelling the patronage, and consequent income through the scheme of chance are the final proof of a consideration paid and a consideration received. Certainly it cannot be questioned that such is the result intended by the bank night operator. Without it, the bank night would speedily cease to be.

That the prize may go to some one who has paid nothing does not negative the fact that many have paid for their chance. Because some have not been drawn into the gambling phase does not render it any the less a lottery, with whatever of evil it engenders, as to the large public who have paid.

Writ of certiorari denied.

ANDERSON, C. J., and GARDNER and FOSTER, JJ., concur.