89 So.2d 537

**L. L. DOZIER et ux.**

v.

**TROY DRIVE–IN–THEATRES, Inc.**

**4 Div. 762.**

Supreme Court of Alabama.

June 14, 1956.

Rehearing Granted Sept. 13, 1956.

Oliver W. Brantley and John C. Walters, Troy, for appellants.

98

E. C. Orme, Troy, for appellee.

PER CURIAM.

This is an appeal by defendants from a final decree in equity in which the court made declaration that the option contained in an agreement, therein referred to, was valid and enforceable; and then proceeded to decree a specific performance of it.

The bill of complaint was filed by appellee, as the assignee of the option referred to, against the grantor of the option, and sought declaration as to its rights under the option agreement and that it had exercised the option; but defendants claim it is void and unenforceable. The bill sought the supplemental relief of specific performance. The equity of the bill was sustained on former appeal. Dozier v. Troy Drive-in-Theatres, Inc., 258 Ala. 417, 63 So.2d 368.

The bill alleges that a lease with option agreement was made between defendants as lessors and M. H. Carter as lessee with the right by Carter to purchase at his option on the terms specified. The option agreement provided for an assignment of the lease by the lessee, and the assignee was to have the same rights. The lease together with the diagram attached were made exhibit "A" to the bill. (The lease will be set out in the report of the case.)

The lease containing the option was dated August 25, 1949. On October 7, 1949 a survey was made by a competent surveyor of the nine acres, as authorized by the contract, and a copy of the survey attached to the contract. On October 11, 1949 Carter assigned the lease to this complainant. The lease with diagram attached were filed for record in the Probate Office of Pike County on October 12, 1949. There was no acknowledgment nor proof

of execution as provided for in section 18, Title 47, Code.

Defendants and Carter, the lessee, agreed on the location of the nine acres. Complainant went into possession and constructed a drive-in-theatre, as contemplated by the contract, at a cost of approximately $40,000. Defendant Dozier visited the land often during construction. Carter paid defendants $360, as provided by the agreement, for the first year's rent as evidenced by check dated September 19, 1949. Carter, who was president of the complainant corporation, advised defendants by letter that he wanted to take up the option and buy the land.

It is not contended that the acceptance of the option was not a sufficient compliance with the requirements of the agreement. The only contention made by appellants is that the option agreement was void for reasons which we will now discuss. The first is that it is void for that it is within the statute of frauds. Title 20, § 3, Code. The theory of appellants in respect to the statute of frauds is that when the option is to purchase land to be selected afterwards by the purchaser, it is within the statute of frauds and void for failing to describe the land. The principle relied on is that to satisfy the statute of frauds, the contract for the sale of land must describe it with such certainty that it can be identified without the aid of oral evidence. Shannon v. Wisdom, 171 Ala. 409, 55 So. 102; Alabama Mineral Land Co. v. Jackson, 121 Ala. 172, 25 So. 709; Ezzell v. S. G. Holland Stave Co., 210 Ala. 694, 99 So. 78; Jones v. Pettus, 252 Ala. 12, 39 So.2d 12. But a general description may be made specific and certain by parol evidence of concurrent facts and circumstances sufficient to that end. Meyer v. Mitchell, 75 Ala. 475; Dobson v. Deason, 248 Ala. 496, 28 So.2d 418.

The case of Alabama Mineral Land Co. v. Jackson, supra, is relied upon by appellants in this connection. It was a suit at law by the seller against the purchaser for the breach of a contract whereby plaintiff was to sell " 'timber from a continuous block of ten thousand acres, consecutive sections, in a northwesterly line from Maplesville, townships 21 and 22,' the purchaser to determine upon a continuous body of lands, mineral lands excepted, and to designate the same to seller on a day named". The purchaser failed to designate the land contemplated and failed to make the payments provided for in the writing. The reasoning of the decision is closely confined.

With respect to an option, the case of Wilkins v. Hardaway, 173 Ala. 57, 55 So. 817, differentiated the Jackson case, supra, by observing that in it there was no exercise of a right of option, and no designation of the lands. In the Wilkins case the particular land involved was to be determined by a survey which was to be made, followed by an exercise of the option. Nothing was said about the necessity of a writing designating the land. In the Wilkins case the Court expressed the view that Howison v. Bartlett, 141 Ala. 593, 37 So. 590, and Alabama Central R. Co. v. Long, 158 Ala. 301, 48 So. 363, 364, were more in point, since there was in it an exercise of the option and designation of the lands. In the Long case defendant agreed to execute a deed conveying "such lands as may be in actual use or occupancy by it on the completion of its roadbed over" certain described land. In a suit for specific performance, the statute of frauds was pleaded on the authority of the Jackson case, supra. The Court observed:

"It will be borne in mind that the terms of the agreement involved do not require that the deed shall be made until a day in the future, when and at which time the lands to be conveyed will be definitely located and ascertained with certainty. In other words, the performance of the contract by Long is postponed until the happening of a future event, to wit, the completion by the complainant of its roadbed over certain described lands and

its actual use or occupancy of such lands. The bill avers the happening of this event in specific terms. Therefore, according to the terms of the contract, by resort to these facts, extrinsic of the writing, but referred to therein, those lands to which the deed is agreed to be made are rendered certain; and at the time the action of ejectment was commenced, and when the bill here was filed, they were susceptible of being accurately described. The contract was conditional until the complainant completed its roadbed over the quarter sections described therein and was in the actual use and occupancy thereof. Then it became absolute, and fixed upon the contractor, Long, the duty to make to the complainant a deed to 'such land as was in the actual use and occupancy of the complainant' in the quarter sections described in the contract. These lands having been made certain, and that, too, by resort to matters referred to in the contract, the statute of frauds presents no obstacle to a specific performance of the contract."

In the case of Howison v. Bartlett, supra, it is said: "Though the contract does not of itself indicate with certainty the quantity or precise location of [the land intended to be sold, if] the description given * * * renders the property capable of identification by means of a survey", such contract if otherwise valid, can be specifically enforced.

In the case of Meyer v. Mitchell, 75 Ala. 475, the contract was to sell "fifty acres Comida and Cone bottom, also ten acres hillside woodland adjoining the Mitchell tract". The Court held that unaided by extraneous evidence of identification, it was void for uncertainty. But it was competent to show by parol evidence that in pursuance of its terms the land intended was pointed out and designated by the parties, and the purchaser placed in possession, and thus aided the ambiguity was cured.

In the case of Alabama Corn Mills Co. v. Mobile Docks Co., 200 Ala. 126, 75 So. 574, it is said: "An easement or right of way over a definitely described tract of land may be effectively granted, and its particular location on the tract fixed, through the aid of a court of equity, even though the grant does not define the boundaries of the way intended to be so granted." To like effect is Long v. Gill, 80 Ala. 408.

In the case of Lightsey v. Stone, 255 Ala. 541, 52 So.2d 376, there was an agreement to convey a portion of a lot as soon as a survey could be made to determine the amount needed. The question was the statute of frauds. The Court found that the contract was in writing and sufficient under the statute of frauds, citing cases to which we have here referred.

In the case of Alabama Power Co. v. Ray, 260 Ala. 506, 71 So.2d 91, a deed was made conveying the right to construct, operate and maintain its wires, poles and towers, as located by the final survey heretofore made by said company. It was said the instrument is not void for want of sufficient description of the easement, citing cases supra.

In 37 C.J.S., Statute of Frauds, § 190, p. 675, it is said that "Courts hold that, where a written contract of sale designates the land as a certain amount of land to be selected from a definitely named tract, it furnishes a definite mode of ascertaining the subject matter and, where the selection has been made at the time suit is brought, the agreement will be held valid and enforceable", citing Alabama cases, supra, and others. And "Where the purchaser or lessee is put into possession, or takes possession with the acquiescence of the vendor or lessor, of a definite tract of land, the identity of the subject matter is established and any uncertainty or indefiniteness in the description thereof is removed." And in 91 C.J.S., Vendor & Purchaser, § 91, p. 974, it is said that "The contract of sale may, without specifically

describing the realty contracted for, make a provision for its selection thereafter".

Here the evidence shows that the selection was made with the concurrence of the lessor; and that the survey was made as provided and attached to the contract.

Appellants contend in brief that although the *lease* violates the statute of frauds at its inception, and may have been taken from its operation by complainant being put in possession as lessee and the payment of rent, but that the *option* was not taken out of the statute of frauds because there was no possession referable to the contract of purchase and no part of the purchase price was paid. Reliance is had on Linn v. McLean, 85 Ala. 250, 4 So. 777, which supports the contention. In that case there was a lease with an option to purchase. There was a letter of acceptance by the attorney for the lessee, but he was not authorized in writing. The suit was against him for the purchase price. He claimed the statute of frauds. The Court held there was no valid acceptance. That the possession he held was as lessee, not as purchaser, and that the amount he paid was rent not purchase price or any part of it.

Although counsel may have made the correct answer to any contention that there was a delivery of possession and part payment of the purchase money as a compliance with the statute of frauds, we are not in agreement with him that the option contract is void for insufficient description of the land taken in connection with evidence of the survey and the location of it with the consent and acquiescence of the lessor. We think the contract is not void for uncertainty and indefiniteness in the description, and therefore the option is not void for that reason.

It is also insisted that the option is invalid for that it violates the rule against perpetuities, in that, it prescribes a period longer than twenty-one years (there being no reference to lives in being) as prescribed by the common law, in which the option may be exercised. Crawford v. Carlisle, 206 Ala. 379, 89 So. 565.

Section 6922, Code of 1923, prescribed a period (not applicable to personal property, nor at all to the wife and children) of three lives in being and ten years. That statute was repealed by an Act approved July 31, 1931, General Acts 1931, page 816, expressing a purpose to reinstate the common law against perpetuities applicable alike to land and personal property. Section 16, Title 47, Code. It is claimed that an option to purchase land which may be exercised beyond said period of twenty-one years (not relating to lives in being), would violate the common law rule against perpetuities. Gray on The Rule against Perpetuities, section 330; 70 C.J.S., Perpetuities, § 13(c), p. 592.

It is said in section 230(3) of Gray on The Rule against Perpetuities: "An option to a tenant for years to purchase the fee, exercisable at a remote time, is bad as violative of the Rule against Perpetuities". But that statement is not adhered to in most American decisions, and this is so stated by Gray in a footnote.

We quote section 395, at page 2326, of Restatement of the Law of Property:

"When a lease limits in favor of the lessee an option exercisable at a time not more remote than the end of the lessee's term

"(a) to purchase the whole or any part of the leased premises; or

"(b) to obtain a new lease or an extension of his former lease, then such option is effective, in accordance with the terms of the limitation, even when it may continue for longer than the maximum period described in section 374, supra."

In Fratcher on Perpetuities and Other Restraints, section 399, is the following:

"In England options in leases, entitling the lessee to renew, are not sub-

ject to the Rule against Perpetuities even though they permit perpetual renewal, but an option to purchase the fee is subject to the rule, even though given to a lessee under a long term lease. In this country options given to a lessee, exercisable only during the term of the lease, whether to renew, or to purchase the fee, are exempt from the Rule against Perpetuities. If Andrew Baker, owning the land in fee simple, leases it to John Stiles, his executors, administrators and assigns for ninety-nine years, with options in the lessee to renew forever on the same terms and to purchase at any time at a price to be determined by arbitrators at the time of exercise, both options are valid".

In The Law of Future Interests section 1244, at page 162, by Simes and Smith, it is said:

"The English courts have felt that the covenant for renewal of a lease was an illogical exception to the rule against perpetuities, and have refused to extend the exception to a covenant to purchase contained in a lease. On the other hand, the weight of authority in the United States is to the effect that an option to purchase contained in a lease is valid, even though it may be exercised at a time beyond the period of the rule. This would seem to be true, however, only if the option would not be exercisable after the expiration of the lease."

In 6 American Law of Property section 24.57, is the following:

"In the United States an option to purchase in a lease exercisable during or at the end of the tenant's term is valid, regardless of the length of the lease, according to cases which are supported by current professional opinion. Gray thought otherwise, favoring the English cases which hold such an option void if exercisable beyond the period of perpetuities."

"Options in a tenant to renew or extend his lease—even options of perpetual renewal—are not invalid under the Rule against Perpetuities anywhere, including England. But options of renewal may run afoul of statutes which put a time limit on the permissible duration of leases, e. g. as in California, ninety-nine years on urban leases and fifteen on agricultural leases."

 In America it is undoubtedly true that the option to purchase in a lease for years puts the rule against perpetuities in the same status as the option to renew which is exempt from the rule, but in England the option to purchase in such lease is subject to the rule.

In the instant case, the lease undoubtedly means to confer on the lessee the option to purchase during its (valid) term. Certainly there is nothing to indicate a purpose to extend beyond the effective termination of the lease. The lease is for ninety-nine years, and if it is valid for that length of time, the option extends over the same period.

While section 18, Title 47, Code, provides that no leasehold estate can be created for more than ninety-nine years, it also provides that leases for more than twenty years shall be void for the excess over twenty years unless acknowledged or proved as required by law as to conveyances and recorded within one year after execution. The lease here in question was recorded within one year after its execution, but it was not acknowledged or proved as required.

 The result seems to be that the term of the lease is for twenty years and not for ninety-nine. The option is to be exercised during the period of the lease, but (by its terms) not within *one year* after its date. The rule against perpetuities is twenty-one years: therefore, on that theory the option would not be within the rule. The statute which fixed the term of

the lease on that date fixed the time in which the option may be exercised.

But it is contended that the option rights are to be determined as of the time of executing the contract, and not affected by later acknowledgment and recording; and at that time the lease was not acknowledged, proved or recorded. So that, at that very time it did not exceed twenty years, and there was no element of cutting it down by subsequent events. It could be extended to ninety-nine years by subsequent events, to wit, by an acknowledgment or proof and then recording, if done within the year.

■ We think it is clear that the option to purchase by the lessee contained in the lease was not invalid for violating the rule against perpetuities.

It is also argued that the provision in the contract reserving to the lessor a right to repurchase, to be exercised within thirty days, on condition subsequent that if an assignee of the lease who purchases the property (the status of this complainant if his option is enforced) shall undertake to sell it, is itself void as violative of the rule against perpetuities, and such reserved right is a part of the consideration of the contract which is therefore void because based upon an illegal consideration. This also applies to the right to repurchase if the property is used for any other commercial purpose than a drive-in-theatre.

Appellant relies upon the principle asserted in many cases that the reservation of an option to repurchase by the grantor in a conveyance, without limit of time but on condition subsequent, is subject to the rule against perpetuities. Restatement of the Law of Property (Perpetuities) section 394; Gray on The Rule against Perpetuities section 330. However, this is controverted by many authorities. 162 A.L.R. 583, et seq.

■ But where there is a *conveyance* of land with a right to repurchase expressed in it without limit of time, it is of course

only the option, and not the conveyance, which is void, if any of it is void, on account of the rule against perpetuities. Hill v. Gray, 160 Ala. 273, 49 So. 676; Woodall v. Bruen, 76 W.Va. 193, 85 S.E. 170; Dodd v. Rotterman, 330 Ill. 362, 161 N.E. 595; Restatement of the Law of Property section 402; 162 A.L.R. 595; 70 C.J.S., Perpetuities, § 21, p. 601.

Although an executory contract based on an illegal consideration is not ordinarily enforceable, it is said in Steele v. Drummond, 275 U.S. 199, 48 S.Ct. 53, 54, 72 L.Ed. 238:

"It is only because of the dominant public interest that one, who has had the benefit of performance by the other party, is permitted to avoid his own obligation on the plea that the agreement is illegal. And it is a matter of great public concern that freedom of contract be not lightly interfered with. Baltimore & Ohio Southwestern Ry. v. Voigt, 176 U.S. 498, 505, 20 S.Ct. 385, 44 L.Ed. 560. The meaning of the phrase 'public policy' is vague and variable; there are no fixed rules by which to determine what it is. It has never been defined by the courts, but has been left loose and free of definition, in the same manner as fraud. 1 Story on Contracts (5th Ed.) § 675; Pope Mfg. Co. v. Gormully, 144 U.S. 224, 233, 12 S.Ct. 632, 36 L.Ed. 414. It is only in clear cases that contracts will be held void. The principle must be cautiously applied to guard against confusion and injustice."

That principle has been applied in our cases. Lowery v. Zorn, 243 Ala. 285, 9 So.2d 872; Bankers & Shippers Ins. Co. of New York v. Blackwell, 255 Ala. 360, 51 So.2d 498.

■ We apprehend that the court would not specifically perform a contract to execute a deed with a clause in it providing for a right to repurchase the land by the grantor on conditions and with stipula-

tions which would violate the rule against perpetuities. Horticultural Development Co. v. Lark, 224 Ala. 193, 139 So. 229. But if the stipulation by which the grantor is to have the privilege of a repurchase on the occurrence of the condition named is a limitation on the fee to be conveyed, presently vested, it has been held by this Court that such a limitation does not violate the rule against perpetuities, for a conditional reservation presently vested is not subject to that rule although exercisable on a contingency. Libby v. Winston, 207 Ala. 681, 93 So. 631; Hinton v. Gilbert, 221 Ala. 309, 128 So. 604, 70 A.L.R. 1192.

 We think the reservation provided for in the contract here involved is a limitation on the fee to be conveyed, in the nature of a condition subsequent, Thompson v. Leyden, 222 Ala. 81, 130 So. 780, which is not affected by the rule against perpetuities because, as stated by the authorities, a valid conveyance can presently be made by the grantor and grantee joining in it. 70 C.J.S., Perpetuities, § 56, p. 657, 70 A.L.R. 1197. For it is said in French v. Old South Society, 106 Mass. 479, see, 70 A.L.R. 1198, if a perpetuity means that " 'if all that have interest join, yet they cannot bar or pass the estate' * * * here is no violation of the rule, for the plaintiff and defendants could at any time join in a conveyance of the property". This theory is based upon the principle that the purpose of the rule is to prohibit the owner of property, by deed or devise, to withdraw it from commerce, so that it cannot again get into commerce during the prescribed period by the act of any or all of the interested persons. It is then irrevocably withdrawn from commerce and cannot be reinstated during that period. While that is stated as the meaning of the rule by the Massachusetts case, supra, it is not so regarded by some other authorities. Gray on Perpetuities section 305.2. The following is a quotation from Church in Brattle Square v. Grant, 3 Gray, Mass., 142, copied in the annotation of

Hinton v. Gilbert, supra, 70 A.L.R. at page 1197, and is directly in point:

"The possibility of reverter, being a vested interest in real property, is capable at all times of being released to the person holding the estate on condition, or his grantee, and, if so released, vests an absolute and indefeasible title thereto. The grant or devise of a fee on condition does not, therefore fetter and tie up estates, so as to prevent their alienation, and thus contravene the policy of the law which aims to secure the free and unembarrassed disposition of real property."

This theory is supported by many American cases,—Gray on The Rule against Perpetuities, sections 304, 310,—though not approved by Gray. We quote section 310, as follows:

"This great consensus of authority, although without any consideration of the question involved, must be held to settle the law for the United States, and to create in this country an exception, arbitrary though it be, to the Rule against Perpetuities."

 It was first stated as the English rule in Birmingham Canal Co. v. Cartwright, (L.R.) 11 Ch.Div. (Eng.) 421. This was overruled in London and S. W. Co. v. Gomm, (L.R.) 20 Ch.Div. (Eng.) 562, see 162 A.L.R. 583. According to this last opinion the English rule is that an option reserved in a deed is subject to the rule against perpetuities. But we are standing by the principle first stated in England in the Cartwright case, supra, that the reservation of a right to repurchase creates a conditional fee, and is a presently reserved vested right in the grantor, although its exercise is dependent on a future contingency.

 In that connection our case of Hinton v. Gilbert, supra, is reported in 70 A.L.R. 1192 as a leading authority, and our case of Libby v. Winston, supra, is noted as supporting it. These cases are based

upon a construction of the instrument as conveying a conditional fee, thereby reserving a right which never passed from the grantor but exercisable on a contingency. Therefore, both the grantor and grantee have an interest in the fee which they can convey and thereby relieve the property of the exemption from trade which the rule seeks to prohibit. These cases have created a rule of property in this State which we should uphold.

■■■■■ Appellants also complain that the court ignored their cross bill seeking a declaration that the lease only extends for twenty years under the statute. Section 18, Title 47, Code. But as to that, there is now no justiciable controversy. The question may never reach the justiciable stage, for within the twenty year period the lessee or his assignee may acquire the conditional fee herein described. This Court will not inquire into and make declaration as to a controversy which may never reach a status proper for court action. Gambill v. Greenwood, 247 Ala. 149, 22 So.2d 903. The expressions in this opinion in that respect are not in the nature of a declaratory judgment, but only stated as incidental to the other questions involved.

■■■ Appellants further complain of the final decree that it does not respond to their contention that complainant should be enjoined from the use of the demised premises for an unlawful purpose: that is, by operating a gift enterprise in violation of the law against gaming in connection with the business of a drive-in-theatre for motion pictures. The lease provides that the property shall be used for no other commercial purpose than the operation of a drive-in-theatre. The cross bill alleges and the proof shows that periodically complainant has been putting on a series of gift enterprises in connection with the picture shows and as an inducement to the public to attend and pay the entrance fee. A description of such enterprises, given in evidence, shows that they violate the statute and Constitution. Section 275, Title 14, Code; section 65 of the Constitution; Grimes v. State, 235 Ala. 192, 178 So. 73. Appellants claim the right to an injunction because such use violates the contract, in that, it is a use of the premises for other commercial purposes than a drive-in-theatre and because as landlords they have a right to enjoin the use of their premises for unlawful purposes.

■■■ We think such use does not violate the terms of the lease in respect to commercial purposes. The only commercial aspect of the scheme is to stimulate attendance at the theatre and add to its success commercially. The gift enterprises are not of an independent commercial sort and are not within the terms of the prohibition in the lease.

■■■ The lessors have no more right to enjoin a nuisance on the premises than any other person, unless the lease prohibits it either expressly or impliedly, or they suffer special damage in that respect. Section 1084, Title 7, Code; 51 C.J.S., Landlord and Tenant, § 343, p. 1030.

■■■ If this bill of complaint describes a nuisance, it is public in nature and a court of equity at the suit of the State by the Attorney General may enjoin it, although it is the injunction of criminal conduct which is ordinarily not subject to injunctive relief. Section 1084, supra; State v. Ellis, 201 Ala. 295, 78 So. 71, L.R.A.1918D, 816; Try-Me-Bottling Co. v. State, 235 Ala. 207, 178 So. 231. This may also be done by cities under certain circumstances. Section 1085, Title 7, Code. But a private individual cannot have injunctive relief against a public nuisance unless he shows irreparable injury and damage peculiar to him, and such damage must relate to the use and occupancy of property as distinguished from damage to market value of property not used or occupied. Russell v. Holderness, 216 Ala. 95, 112 So. 309; Hanna v. Harman, 230 Ala.

620, 162 So. 109; Howard v. State, ex rel. Andrews, 238 Ala. 185, 190 So. 278, 279; Scruggs v. Beason, 246 Ala. 405, 20 So.2d 774.

For the reasons stated in Try-Me-Bottling Co. v. State, supra, and as provided in section 1084, Title 7, the lottery or gift enterprise here referred to is a public and not a private nuisance. Cross complainants show no injury to themselves resulting from it, especially such as is irreparable.

For the reasons indicated the injunction was denied by the trial court without error.

It is our view that the lease option agreement is not void for any reason here considered, and that the decree of the court to that effect should be affirmed. That feature of the decree providing for specific performance is also justified by the facts, except the provision to be inserted in the deed directed to be executed by defendants (these appellants) for a covenant on the part of the grantee that on the contingency named appellants shall have the option to repurchase, should be ·eliminated and there should be inserted in the decree providing for a deed, in lieu of that clause, one declaring that the conveyance is of a conditional fee whereby, upon the occurrence of the conditions expressed, appellants shall have the option to repurchase the land on the terms thus expressed.

The decree should be affirmed as modified.

The foregoing opinion was prepared by Foster, Supernumerary Justice of this Court, while serving on it at the request of the Chief Justice under authority of Title 13, section 32, Code, and was adopted by the Court as its opinion.

As modified the decree is affirmed.

. LIVINGSTON, C. J., and LAWSON, STAKELY and MERRILL, JJ., concur.

On Rehearing.

PER CURIAM.

 The application for rehearing is granted, and the judgment as to cost of appeal is modified so as to tax cost of appeal equally between appellants and appellee.

LIVINGSTON, C. J.; and LAWSON, STAKELY and MERRILL, JJ., concur.