These appeals arise from the sale of a ticket to a Northport Chamber of Commerce (Chamber) social function. The tickets of admission sold by the Chamber to its social function also entitled their holders to a chance to win a 1983 Lincoln Continental automobile. Ms. Betty Bailey and her business partner, Michelle Parker, bought one of these tickets in order to attend the Chamber's function and get a chance of winning the car. Under the rules established by the Chamber concerning the drawing for the car, the ticket holder could sell his ticket to the highest bidder present before the drawing occurred, with the Chamber receiving 20% of that purchase price. Prior to the drawing, Ms. Bailey decided to sell her ticket to Clint Youngblood for $1,000 ($800 was to be paid to her and $200 was to be paid to the Chamber). This ticket was drawn as the winning ticket. *Page 858 
On the Monday following the drawing, Ms. Bailey and the Chamber discovered that the checks written by Youngblood as payment for the winning ticket were drawn on an account with insufficient funds to honor the checks. When Youngblood tried to give a cashier's check to Ms. Bailey later in the week for the amount of the dishonored check, Ms. Bailey refused to accept it and demanded that the winning ticket be given back to her so that she could claim the car. Youngblood refused to return the ticket and informed Ms. Bailey that he had sold his interest in the car to a Ms. Louise Davis and that Ms. Davis would receive title to the car.
Ms. Bailey and Ms. Parker (sometimes hereinafter "plaintiffs") filed an action against Mr. Youngblood (sometimes hereinafter "defendant"), claiming that he had defrauded them by falsely representing that his account could cover the check written for their ticket and seeking an order from the trial court rescinding the sale of the ticket and declaring them to be the rightful owners of the car. They then amended their complaint to add Ms. Davis as a defendant, claiming that she knew that Mr. Youngblood did not have good title to the car and that she was part of a scheme to defraud the plaintiffs. The Chamber then filed an interpleader action, naming Bailey and Youngblood as defendants. The Chamber paid into court the $200 it received from Mr. Youngblood as payment for its part of the ticket and sought a determination by the court as to who was the actual owner of the car.
In its judgment, the trial court found that Youngblood had intentionally defrauded the plaintiffs. The court made the following orders:
 "[12] That a judgment is hereby entered in favor of the plaintiffs, Betty Bailey and Michelle Parker, d/b/a Everett's Florist, against the defendant, Clint Youngblood, for compensatory damages in the amount of $800.00.
 "[13] That a judgment is hereby entered in favor of the plaintiffs, Betty Bailey and Michelle Parker, d/b/a Everett's Florist, against the defendant, Clint Youngblood, for punitive damages in the amount of $10,000.00.
 "[14] That the defendant, Louise H. Davis, is hereby ordered not to make any demand for or otherwise attempt to obtain possession of the prize automobile, until the expiration of 30 days from the date of this Final Judgment.
 "[15] That Plaintiff, Louise H. Davis, . . . is a good faith purchaser for value as that term is defined in § 7-2-403, Code of Alabama, 1975.
Accordingly, Plaintiff Davis is hereby awarded the title to the 1983 Lincoln Continental Town Car, the subject of Plaintiff Davis' Petition for injunction and other relief. . . .
 "[16] IT IS FURTHER ORDERED, ADJUDGED AND DECREED that the Defendant, Clint Youngblood, shall pay an attorney's fee of One Thousand Five Hundred Dollars ($1,500) to Henley, Whitehurst Shirley, P.C., the attorneys for Plaintiff, Northport Chamber of Commerce. . . .
 "[17] IT IS FURTHER ORDERED, ADJUDGED AND DECREED that the sum of Two Hundred Dollars ($200) heretofore paid into Court by the Plaintiff, Northport Chamber of Commerce, be refunded by the Clerk of the Court to the said Plaintiff."
The initial question that must be decided by this Court is whether the activity conducted by the Northport Chamber of Commerce was an illegal lottery under the laws of Alabama. The Chamber offered tickets to members of its organization to attend a social function. Along with admission, the ticket also purchased a chance to win a 1983 Lincoln Continental. The Chamber charged $150 per ticket, and plaintiffs Bailey and Parker paid this amount in order to receive their ticket. Under the rules established by the Chamber, numbers corresponding to the tickets were randomly drawn out of a basket until a final ticket was chosen as a winner.
Under Article IV, Section 65, of the Alabama Constitution of 1901, the State Legislature is specifically prohibited *Page 859 
from authorizing any type of lottery and is affirmatively required to pass laws prohibiting lotteries. This Court has stated that in order to constitute a lottery violative of this provision, three elements must be present: (1) A prize, (2) awarded by chance, (3) for a consideration. Opinion of theJustices, 397 So.2d 546, 547 (Ala. 1981). This Court has also stated that the constitutional provision prohibiting lotteries also applies to those lotteries conducted by legitimate businesses and to those lotteries where the purchase price for the ticket entitles the holder to more than just the chance to win the prize. Grimes v. State, 235 Ala. 192, 193, 178 So. 73,74 (1937). In this case, all three of the elements are present: The 1983 Lincoln Continental is the prize; the tickets were randomly drawn so that chance, not skill, determined the winner; and, each ticket holder, including the plaintiffs, was required to pay the Chamber $150 for the ticket. With all three elements present, this activity is a lottery and directly violates the public policy of this State. Try-Me Bottling Co.v. State, 235 Ala. 207, 212, 178 So. 231, 234 (1938).
After answering this threshold question, we must next address the question of the enforceability of a contract based on such an illegal activity. As a general proposition, a court will not aid either party to an illegal contract, in enforcing or rescinding that contract, but will instead leave the parties where it found them, if both are equally at fault. May v.Draper, 220 Ala. 214, 215, 124 So. 89, 91 (1929). There are two contracts involved here, and each must be addressed separately.
The first contract is between the plaintiffs and the Chamber. The plaintiffs purchased their lottery ticket from the Chamber for $150. The defendant has asserted that because this contract is based on the illegal activity involved the plaintiffs can not now seek relief. We disagree with this contention. In Mattav. Katsoulas, 192 Wis. 212, 212 N.W. 261 (1927), the Court was faced with a situation similar to the one presented here. There, the plaintiff had given possession of a lottery ticket he had purchased to the defendant so that the defendant could pick the car up for him. After the defendant took possession of the car, he refused to turn the car over to the plaintiff, and when sued, used the illegality of the lottery as his defense. The court there stated:
 "The defendant cannot defeat plaintiff's recovery by showing that the automobile was secured by means of a lottery which was in violation of law. The owner of the roof garden [the conductor of the lottery] was the only one who could be heard to maintain that plaintiff was not entitled to the automobile because the drawing was held contrary to law."
192 Wis. at 213, 212 N.W. at 261. The court then decided that the plaintiff was entitled to the car and awarded title to him, notwithstanding the underlying illegality of the lottery, because "[t]he rule that the law will not enforce an illegal contract has application only as between the immediate parties to the contract." 192 Wis. at 214, 212 N.W. at 262. See also,Marx v. Lining, 231 Ala. 445, 165 So. 207 (1935) (contracts offensive to the public policy of the state may be enforced because of the inability of an affected party to plead their invalidity).
According to 38 Am.Jur.2d Contracts § 59, p. 154 (1968), the receiving of a prize awarded in a lottery, if it is voluntarily delivered, is not prohibited. Because the parties to this first contract are content to allow its voluntary enforcement, Mr. Youngblood, the party to the subsequent contract, may not plead the underlying illegality of the first contract as his defense.
The subsequent contract between the plaintiffs and the defendant for the resale of the lottery ticket is the next item to be addressed. Here, the defendant asserted the following affirmative defense to the action filed by the plaintiffs:
 "The action brought by the Plaintiffs herein is based upon, in consideration of, or in furtherance of the promotion, advance, or participation in a lottery, which *Page 860 
is illegal under the laws of the State of Alabama, and, each of the parties hereto being in pari delicto is barred from seeking judicial relief to change the result or outcome of said illegal activity."
We agree with the defendant's contention that the contract between himself and Ms. Bailey is based upon an illegal activity and therefore void. This is because 20% of the agreed upon purchase price was to be paid to the Chamber as conductor of the lottery, and if part of the transaction was prohibited by law then the entire transaction was void and not enforceable to any extent. Booker T. Washington Ins. Co. v. Roberts,228 Ala. 206, 209, 153 So. 409, 411 (1934).
We disagree, however, with the defendant's statement that the parties involved here are in pari delicto. The trial court specifically found that the defendant knew, at the time he purchased the plaintiffs' ticket, that the account he was writing his checks on had insufficient funds to cover them. Testimony was also produced at trial to indicate that this was in fact the fourth time the defendant had utilized the same scheme to defraud persons out of lottery tickets. There is an exception to the general rule concerning the enforcement of illegal contracts by courts of law. This exception is stated in 17 C.J.S. Contracts § 274, p. 1198-99 (1963):
 "Where the parties are not in pari delicto, or equally guilty, which they may not be, and where public policy is considered as advanced by allowing either, or at least the more excusable of the two, to sue for relief against the transaction, relief will be given. . . .
 "The cases of this character exist generally where the party asking to be relieved from the effect of an illegal agreement was induced to enter into the same by means of fraud; here he is not regarded as being in pari delicto with the other party, and the court may relieve him."
In Alabama case law, this exception has been accepted with approval. In Horticultural Development Co. v. Schneider,225 Ala. 667, 145 So. 135 (1932), the plaintiff sought to have a contract for the purchase of real estate, which had previously been declared void and illegal as against public policy, rescinded and cancelled. This Court decided that because the contract had been procured by the fraud of the defendant, the parties were not in pari delicto, and the courts would therefore grant relief to the plaintiff. The Court cited 13 Corpus Juris 498, which makes the statement quoted above from 17 C.J.S., as authority for this decision. In Thompson v. Wiik,Reimer, Sweet, 391 So.2d 1016 (Ala. 1980), the plaintiff signed a contract to sell a business that contained within it a covenant not to compete. The contract provided that the defendants would make monthly payments to the plaintiff for six years. However, the defendants stopped making payments with one and one-half years remaining on the contract, and the plaintiff filed suit. This Court decided that the covenant not to compete made the contract illegal and void. We then discussed the exception stated above and accepted the proposition. However, in that case, it was said not to apply because there was no claim or evidence of fraud. As previously discussed, in the present case the fraud of the defendant has been claimed and proven.
Therefore, even though the contract between the plaintiffs and the defendant is based on an illegal lottery, we believe these plaintiffs are deserving of relief because of the fraud perpetrated on them by the defendant. We therefore reverse the order of the trial court awarding the car to Ms. Davis as a good faith purchaser. Under our reasoning today, Ms. Davis would not be a "good faith purchaser," because the defendant Youngblood, her transferor, received a void title from the contract between himself and the plaintiffs. Code 1975, §7-2-403, states, "[A] purchaser of goods acquires all title which his transferor had or had power to transfer. . . ." Here, the defendant received no title under this void contract, and, hence, no person could be a "good faith purchaser" of his title. *Page 861 
Because of our decision to award the car to the plaintiffs, we also reverse the trial court's award of $800 compensatory damages to the plaintiffs. Compensatory damages are intended only to reimburse persons for the losses suffered by reason of an injury to person or property. Matheny v. Petersen, 276 Ala. 478,483, 163 So.2d 635, 638 (1964). Here, the trial court made the determination that the plaintiffs were entitled to compensation for the loss they sustained by not receiving the purchase price for their lottery ticket. However, because we have determined that the sale of that ticket was void, due to the underlying illegality of the transaction, that is not the loss the plaintiffs suffered. Instead, the loss here is the inability of the plaintiffs to obtain the title to a car that was theirs. Therefore, the plaintiffs are entitled to be awarded title to the car. Generally, an award of compensatory damages connotes the giving of an equivalent or substitute of equal value for a loss or injury. Given that the loss suffered by the plaintiffs was their inability to obtain title to the car, we recognize that the award of title to the car to the plaintiffs may not meet the technical definition of compensatory damages. Nevertheless, in the context of this case, the award is so similar in nature to that of one for compensatory damages as to be almost indistinguishable. Therefore, the award is sufficient to sustain the trial court's award of punitive damages.
As to the trial court's award of attorney fees in the interpleader action, the decision to impose the attorney fees on the defendant cannot be allowed to stand. Though we recognize that the imposition of attorney fees in an interpleader action is at the discretion of the trial court,Air Movers of America, Inc. v. State Nat'l Bank of Alabama,293 Ala. 312, 302 So.2d 517 (1974), there is nothing in the interpleader rule, A.R.Civ.P. 22, to sustain such an award against the defendant in this case. Under the interpleader rule, attorney fees are to be disbursed out of the "fund or property" that is interpleaded. In this case, the "property" interpleaded by the Chamber was the prize it sought to award through the lottery, i.e., the car. Because the trial court assessed the attorney fees directly against the defendant and did not make them payable out of the "fund or property" interpleaded, its order, as such, cannot be sustained. However, we hold that an award of attorney fees, in accordance with the procedure outlined by A.R.Civ.P. 22, is appropriate out of the property interpleaded by the Chamber.
We therefore hold that the trial court erred in awarding the automobile to Louise Davis. We affirm the award of $10,000 punitive damages as ordered by the trial court. As regards the imposition of attorney fees, we remand the cause to the trial court with instructions to make the award payable out of the property interpleaded. We reverse the trial court's award of $800 as compensatory damages.
AFFIRMED IN PART; REVERSED IN PART; AND REMANDED WITH INSTRUCTIONS.
MADDOX, ALMON, SHORES, EMBRY, BEATTY and ADAMS, JJ., concur.
FAULKNER and JONES, JJ., not sitting.