HOLMES, Retired Appellate Judge.
Langston 0. Thomas appeals from a summary judgment entered in favor of Omega Men of North Alabama, Inc., and several of its members.
At the outset we deem it necessary to provide a brief description of the parties involved in the instant ease. Langston O. Thomas is the president of the local (Huntsville/Madison County, Alabama) chapter of the National Association for the Advance *983 ment of Colored People (NAACP). Charles Jones is the founding president of Omega Men of North Alabama, Inc. (OMNA), which is a nonprofit corporation formed by the Omega Psi Phi Fraternity.
Our review of the record reveals the following pertinent facts: OMNA apparently planned to build a community center for children in the Huntsville, Alabama, area. As part of a fundraiser, OMNA scheduled a “drawing” for August 25,1995. According to a brochure printed by OMNA, the drawing would produce 35 winners: one — $10,000 winner; one — $2,000 winner; one — $1,000 winner; one — $500 winner; one — $300 winner; and thirty — $100 winners. The cost of each ticket was $100. Thomas purchased one ticket for $100.
On August 24, 1995, the day before the drawing, Thomas and Reverend Shanklin, the chairperson of the labor and industry committee of the NAACP, met with representatives of a restaurant group (RTM), which owns various restaurant franchises throughout the country, to discuss certain complaints that had been filed with the NAACP against RTM. We would note that Langston also invited Jones from OMNA to attend that meeting.
The testimony is conflicting regarding the true purpose of that meeting. However, it is undisputed that during the meeting, RTM agreed to make a $5,000 donation to OMNA. The senior vice president of RTM, who was present at the meeting, testified that RTM ultimately “wired” $5,000 to OMNA on August 25, 1995, the day of the drawing because, she said, Thomas indicated in the meeting that OMNA “[was] in trouble, that [OMNA] had publicized this raffle, and did not have the money to cover the prizes.” It is undisputed that RTM did not receive any tickets in return for its donation.
In fact, Jones testified that after RTM wired the $5,000, he took approximately 50 tickets and placed the names of his family members and friends on the ticket stubs. It is undisputed that Jones gave ten tickets to Thomas. As noted previously, Thomas also purchased one ticket for consideration. The drawing occurred on August 25, 1995, as scheduled, and Thomas apparently won the 3 largest prizes and possibly another $100 prize. However, OMNA refused to distribute the prize money to Thomas.
On January 16, 1996, Thomas filed a complaint against OMNA and several of its members, alleging breach of contract, fraud, and slander. On September 4, 1996, OMNA and its members filed a joint motion for a summary judgment, asserting the defense of illegality. On January 6,1997, following a hearing, the trial court granted the summary judgment motion on all three counts.
Thomas appeals. This case is before this court pursuant to Ala. Code 1975, § 12-2-7(6).
On appeal an appellate court must decide whether a genuine issue of a material fact exists. If it is determined that no genuine issue of a material fact exists, then the appellate court must determine whether the moving party was entitled to a judgment as a matter of law. The appellate court must view the record in a light most favorable to the nonmoving party, and it must resolve all reasonable doubts against the moving party. McClendon v. Mountain Top Indoor Flea Market, Inc., 601 So.2d 957 (Ala.1992).
Initially, this court must address the issue of whether the drawing conducted by OMNA constituted an illegal lottery under Alabama law. Our supreme court, in Young-blood v. Bailey, 459 So.2d 855, 858-59 (Ala. 1984), stated the following:
“Under Article IV, Section 65, of the Alabama Constitution of 1901, the State Legislature is specifically prohibited from authorizing any type of lottery and is affirmatively required to pass laws prohibiting lotteries. This Court has stated that in order to constitute a lottery violative óf this provision, three elements must be present: (1) A prize, (2) awarded by chance, (3) for a consideration. Opinion of the Justices, 397 So.2d 546, 547 (Ala.1981).”
In the instant case all three’ elements are present: The cash was advertised as the prize, the tickets were randomly drawn so that chance determined the winner, and each tieket holder was required to pay OMNA $100 for a ticket. The presence of all three *984 elements makes the drawing a lottery, which directly violates the public policy of this State.
Thomas does not dispute the illegality of the lottery. Instead, he contends that a contract based on such illegal activity is enforceable by virtue of the fact that the parties were not in pari delicto, or equally guilty. Specifically, Thomas contends that OMNA committed fraud when it used the word “donation” in its advertisement which, Thomas says, induced him to believe that the lottery was legal. We agree with Thomas’s contention that an illegal contract may be enforced when the parties involved are not in pari delicto. See Youngblood, 459 So.2d at 859. However, we find that Thomas is not entitled to equitable relief under this theory by virtue of the following major obstacle.
As noted previously, Thomas purchased one ticket for consideration. He, in turn, acquired ten additional tickets as unconditional gifts. It is well settled that consideration is an essential element of a contract. Steiger v. Huntsville City Bd. of Education, 653 So.2d 975 (Ala.1995). In the instant ease, Thomas apparently was the winner of three and possibly four of the cash prizes. The tickets and the ticket stubs were not numbered, however. Thus, Thomas cannot prove which ticket corresponds with which cash prize. It is very possible that the one' ticket that Thomas actually purchased for' consideration was not one of the tickets 'that was actually drawn. When we view the evidence in a light most favorable to Thomas, it is our opinion that, because Thomas cannot prove that the ticket that he actually purchased was a winning ticket, he has failed to provide any evidence of a breached contract. Thus, his claim for breach of contract based upon fraud must fail.
Thomas attempts to circumvent the above logic with the assertion that an executed gift stands on the same footing as a contract. However, Thomas has provided no Alabama case law on this point. “The courts have established many distinctions between gifts and other transactions. Owing to the absence of consideration, a gift inter vivos does not come within the legal definition of a contract.” 38 Am. Jur. 2d Gifts § 2 (1968) (footnotes omitted). Based on the foregoing, we affirm the trial court’s entry of a summary judgment on the above claims.
Finally, Thomas alleges that two OMNA members made statements to two members of the NAACP, indicating that Thomas was involved in fraud and other wrongful conduct. Specifically, Thomas contends that the two OMNA members told the two members of the NAACP that Thomas took “hush money” to assure that the NAACP would not vigorously prosecute cases involving RTM and that the NAACP was compromised as a result thereof.
We would note that both parties offered evidence in support of their relative positions. The record does contain evidence of possible defamatory statements regarding Thomas and his alleged wrongful conduct in the lottery. However, this court is unable to determine whether the evidence presented amounts to slander. In Ex parte Rudder, 507 So.2d 411, 416 (Ala.1987), our supreme court stated the following:
“In actions for defamation, there must be an initial determination by the trial judge in regard to the status of- the allegedly defamed person as a public official, a public figure, or a private individual. Furthermore, where it is determined that a private individual is alleging defamation, there must be a determination of whether the defamatory speech involves a matter of public concern. These determinations are questions .of law for the trial judge. These issues must be resolved first, because the manner of their resolution determines what elements of proof are necessary for recovery.”
(Citations omitted.)
In the instant case the trial court failed to make any determination as to whether Thomas is a private or public figure. Until it makes a determination, this court cannot ascertain which elements to utilize in determining whether Thomas presented substantial evidence to support his slander claim. Id.
We, therefore, reverse that portion of the trial court’s judgment regarding the slander *985 claim, and remand this cause to the trial court for further proceedings, including a determination of Thomas’s status as a public figure or a private individual.
Based upon the foregoing, the trial court’s judgment is affirmed in part and reversed in part, and the cause is remanded for proceedings consistent with this opinion.
The foregoing opinion was prepared by Retired Appellate Judge Richard L. Holmes while serving on active duty status as a judge of this court under the provisions of § 12-18-10(e), Ala. Code 1975.
Thomas’s request for attorney fees on appeal is denied.
AFFIRMED IN PART; REVERSED IN PART; AND REMANDED.
ROBERTSON, P.J., and YATES, CRAWLEY, and THOMPSON, JJ., concur.
MONROE, J., concurs in the result.