80 So.2d 308

**James Allen CLARK**

v.

**STATE.**

**6 Div. 891.**

Court of Appeals of Alabama.

Oct. 19, 1954.

Rehearing Denied Dec. 7, 1954.

Gibson & Gibson and Lange, Simpson, Robinson & Somerville, Birmingham, for appellant.

---

1.  37 Ala.App. 603.

2.  261 Ala. 699.

Si Garrett, Atty. Gen., Robt. Straub, Asst. Atty. Gen., and Owen Bridges, Montgomery, of counsel, for the State.

Jas. J. Carter, Hill, Hill, Stovall & Carter, Montgomery, amici curiae.

PRICE, Judge.

Appellant was charged with conducting a lottery. Upon trial on his plea of not guilty before the court, sitting without a jury, he was convicted and assessed a fine of $25.

The following statement of facts which is fully borne out by the record, is taken from the brief of appellant's counsel:

The defendant (appellant) was Vice President and General Manager of R. B. Broyles Company, Inc., operator of a furniture and appliance store in the City of Birmingham, Jefferson County, Alabama, since about 1900. In connection with the business, a weekly quarter hour television program called "Mr. Twister Time" was presented over a Birmingham broadcasting station. This had continued for about a year and a half prior to the indictment, including the dates alleged in the indictment, and was supervised and directed by the defendant. On this program, an employee of the business rotated a barrel containing a number of small slips of paper on which were individuals' names and addresses. From time to time a ticket or slip was drawn at random from the barrel. It was then handed to the defendant who read out the name on the slip and announced that the person whose name was on that particular slip would be awarded a gift or prize, absolutely free by the store. The names and addresses from which the slips were drawn were those which individuals had placed personally or by some friend in the barrel in the R. B. Broyles furniture store during the preceding week, or who had written requesting that their names be placed therein. The container was kept just inside the front entrance of the furniture store, near a substation of the United States Post Office located therein. On a table near the container the defendant's employer provided a supply of blank slips like those in evidence. A host, employed by the company, acted as a "greeter" and invited persons to register, or provided them with tickets at their request. Anyone who desired to do so could register and thereby become eligible to participate

in the next drawing. No sum of money nor any other property was asked of any person for the privilege of registering and participating in the drawing, and none was received. No registrant was asked to make any purchase, open any account, nor make any payment upon an existing account. No registrant was asked or required to inspect any of the merchandise in the store, nor solicited to buy merchandise in the store, nor solicited to buy anything. The location of the table, the blank tickets and the container was such that the registrant was not required to pass through the main display portion of the store in order to register for the drawing. No list of the registrants was retained for any future purpose, the tickets not drawn being disposed of each week after the drawing.

On Tuesday night of each week, the barrel was taken to the television studio, and ten tickets were drawn at random from it during the program. From another in which only children had registered, three more were similarly drawn. After each was drawn, the defendant, on the occasion specified in the indictment, announced to the viewing and listening public the name on the ticket and stated that that individual had won an article of merchandise. All awards consisted of merchandise from the Broyles store. The winner was invited to telephone to or call at the store, identify himself and receive the article. If the party desired, or if the article was bulky or heavy, it would be delivered to his home without his coming to the store and without charge. No person who came to the store in connection with an award was asked to inspect or purchase other merchandise, pay any sum, or undertake any obligation of any kind. An individual who had won once was not ineligible to participate in future drawings and some had won more than once. It was not necessary that the registrant own a television set, watch the program, or commit himself to do so to be eligible. The store telephoned or wrote each winner on the day following the drawing and informed him of the fact. It was not necessary that the registrant be at any particular place in order to qualify nor to claim an award. There was no limit on the time within which the individual was required to claim the merchandise. When appropriate, the individual had the unhampered right to select the particular color or type of article to be received, or to exchange it for some other more suitable article of the same value.

The television show cost the defendant's company approximately $150 per week in merchandise, net, at cost, plus approximately $99.50 per week in television time. This was paid out of the regular appropriation for advertising by the company and the television program and gift drawing were a part of the concern's "institutional" advertising. Listener rating surveys indicated that the "Mr. Twister" program was viewed weekly by 35,000 to 40,000 people in Birmingham and in the area within a radius of one hundred twenty-five miles from Birmingham. From 5,000 to 6,000 persons registered each week, about 600 of whom did so by mail. The company had used various types of advertising for more than thirty-five years. These included direct letter, radio, newspaper and television. "Institutional" advertising had the purpose and object of keeping the name of the store before the public. Registration to participate was open to the general public. It was not necessary to be or to have been a customer of the Broyles store to register, nor to receive the free merchandise. No record was kept as to how many registrants or winners, if any, later became customers, and whether or not the program had actually increased sales was not known.

It is generally understood that to constitute a lottery three essential elements must co-exist: "(1) A prize, (2) awarded by chance, (3) for a consideration", Grimes v. State, 235 Ala. 192, 178 So. 73, 74, and, "the species of lottery, the carrying on of which is intended to be prohibited as criminal * * * embraces only schemes in which a valuable consideration of some kind is paid, directly or indirectly, for the chance to draw a prize." Yellow-Stone Kit v. The State, 88 Ala. 196, 7 So. 338, 7 L.R.A. 599.

It is conceded that the first two of the essential elements are shown by the proof.

The question is whether the element of a consideration is shown.

It is urged for the State that the registering of a large number of prospective customers; the benefit to the store of the institutional advertising; the service performed by the registrants in advertising the program among relatives and friends; the time, trouble and expense to the registrant in going to the store to register, afforded the element of consideration necessary to constitute the scheme a lottery.

We do not agree with the State's insistence. The facts in the instant case are similar in all material respects to those in the Yellow-Stone Kit case, supra. There, the court held that the giving of prizes for the purpose of inducing a crowd to assemble with the hope that they would buy defendant's products would be too remote to constitute a legal consideration for the chances given. The holding in the following cases from courts of other jurisdictions is to the same effect. Brice v. State, 156 Tex.Cr.R. 372, 242 S.W.2d 433; Cross v. People, 18 Colo. 321, 32 P. 821, 36 Am.St.Rep. 292; Garden City Chamber of Commerce v. Wagner, D.C., 100 F.Supp. 769; State v. Hundling, 220 Iowa 1369, 264 N.W. 608, 103 A.L.R. 861; Commonwealth v. Wall, 295 Mass. 70, 3 N.E.2d 28.

In Brice v. State, supra [156 Tex.Cr.R. 372, 242 S.W.2d 435], the Texas Court quoted at length from the Yellow-Stone Kit case, and said: "The 'consideration' in this case which moves from the parties participating in the drawing for the prize, or prizes, to appellant is entirely fanciful. It is not sufficiently substantial to be classed as a reality. If the people who registered are to be construed to have paid a consideration by merely stepping into the house and signing their names, we would find ourselves in conflict with all the decisions of our civil courts on questions of contract involving a consideration. It would hardly be necessary to discuss the question if involved in a civil action. Just why we should use a different rule to measure a consideration is not understandable."

In Cross v. People, supra [18 Colo. 321, 32 P. 822], tickets or chances were given to persons registering their names at appellant's shoe store and were also mailed to those who sent postage. The prize was a piano. It was stated: "The fact that such cards or chances were given away to induce persons to visit their store with the expectation that they might purchase goods, and thereby increase their trade, is a benefit too remote to constitute a consideration for the chances. Persons holding these cards, although not present, were, equally with those visiting their store, entitled to draw the prize. The element of gambling that is necessary to constitute this a lottery within the purview of the statute, to wit, the paying of money, directly or indirectly, for the chance of drawing the piano, is lacking, and the transaction did not constitute a violation of the statute."

In Garden City Chamber of Commerce v. Wagner, supra [100 F.Supp. 770], the holding is thus stated in the syllabus: "Where village merchants promulgated plan whereby card bearing certain number would be mailed to individuals, and stub containing such number would be attached to prizes exhibited in windows of merchants, and recipient of card whose number was attached to exhibited prize would, upon matching of numbers, be given prize, fact that matching of numbers required walking or driving to look into window was not a sufficient consideration to make cards part of 'lottery' * * *." and in the opinion: "The examination of authorities made in the present case induces the belief that the consideration requisite to a lottery is a contribution in kind to the fund or property to be distributed."

In State v. Hundling, supra [220 Iowa 1369, 264 N.W. 610], the Iowa Court said: "The question is not whether the donor of the prize makes a profit in some remote and indirect way, but, rather, whether those who have a chance at the prize pay anything of value for that chance. * * * Profit accruing remotely and indirectly to the person who gives the prize is not a substitute for the requirement that he who has the chance to win the prize must pay a valuable consideration therefor, in order to make the scheme a lottery."

In Commonwealth v. Wall, *supra* [295 Mass. 70, 3 N.E.2d 30], the principle was stated in this manner: "The indirect advantage to the [mercantile establishment] is not in itself a price paid by participants."

In the instant case nothing of value was paid by any of the participants for the chance of winning a prize and, under the foregoing authorities, the fact that appellant may have gained some benefit or expected to gain some benefit by way of increased sales did not afford the consideration required to constitute a violation of the statute, therefore, the evidence is insufficient to sustain the conviction and the judgment must be reversed.

Reversed and remanded.