Pepsi Cola Bottling Company of Luverne, Inc., sought to appeal or, in the alternative, to get certiorari review of the judgment of the trial court finding it in contempt for an alleged violation of a 1982 injunction issued by the Covington County Circuit Court pursuant to a complaint filed by Coca-Cola Bottling Company of Andalusia and Alabama Citizens Action Program ("ALCAP"). Because review of a judgment of contempt is by certiorari, we treat Pepsi Cola's request as one for a writ of certiorari and we grant that review. See Parker v. Reaves 531 So.2d 853 (Ala. 1988). The injunctive order of the trial court dated April 8, 1982, finding that Pepsi's promotional campaigns amounted to lotteries in violation of Article IV, § 65, Constitution of Alabama 1901, and Alabama Code 1975, § 13A-12-20, states:
 "Plaintiff Coke [Coca-Cola] and [d]efendant [Pepsi Cola] are forthwith permanently enjoined from operation of promotional campaigns whereby consumers of soft drink beverages are participants in 'under the crown' or 'on the tab' games of chance for which a purchase is necessary in all instances except for the right to obtain free crown[s], tabs, or chances at some place other than the point of purchase of the beverage." (Emphasis added.)
The 1981 campaigns that were the subject of this injunction were "Pepsi Spirit," in which participants could win cash, and "NFL Prizes," in which gift certificates and football jerseys were given away. Other than by purchasing the soft drink, the only way to participate in the giveaway campaign was to request free bottle tops by mail or to visit the Pepsi bottling plant. The trial court found that only 60 people had requested free caps during the campaign and declared the free participation option a sham.
In 1987, Pepsi began its "Instant Cash" promotion, in which certain caps were marked $.25, $1.00, or $100.00, and others were marked with the letters needed to spell "Pepsi Instant Cash"; the promotion offered a prize of $10,000 to someone presenting caps containing all the letters. For this campaign, Pepsi distributed 25,000 cards with a similar opportunity at participating stores and advertised via store displays and radio that no purchase was required. Cards could also be obtained by telephone request and by writing the bottling plant or production center in Columbus, Georgia.
Coca-Cola argues that Pepsi's "Instant Cash" campaign violates the 1982 injunction and that the game constitutes a "lottery" in violation of § 65 of the Constitution and Alabama Code 1975, § 13A-12-20.
 I
The three elements of a lottery are (1) a prize, (2) awarded by chance, and (3) for a consideration. Grimes v.State, 235 Ala. 192, 178 So. 73 (1937); State v.Crayton, 344 So.2d 771 (Ala.Civ.App.), cert.denied, 344 So.2d 775 (Ala. 1977). Admittedly, the first two elements are present in Pepsi's promotion; however, the element of consideration is absent.
The very question on appeal was recently answered in our response to the Alabama House of Representatives' inquiry as to whether a bill proposing to allow "[a]ny contest for prizes or money as rewards, which is for promotional or advertising purposes *Page 297 
sponsored or conducted by any . . . soft drink bottler in this state . . . not requir[ing] . . . consideration therefor" was constitutional. Opinion of the Justices No.277, 397 So.2d 546 (Ala. 1981).[1] In finding that the proposal did not offend § 65 of the Constitution, this Court relied upon Clark v. State, 38 Ala. App. 78,80 So.2d 308 (1954), cert. denied, 262 Ala. 462,80 So.2d 312 (1955), stating that "the fact that the business enterprise may be 'expected to gain some benefit by way of increased sales' [does not] constitute [the necessary] consideration. Clark v. State, supra,38 Ala. App. at 82, 80 So.2d at 311." Opinion of the Justices No.277, 397 So.2d at 547.
For the same reason, the "Pepsi Instant Cash" game is not a lottery, because participants were not required to purchase cards in order to play. Any incidental profit or benefit to Pepsi in the sale of the soft drinks containing the "under the crown" chance neither provides the consideration to make the game a lottery nor negates the free participation aspect of the game.
We also find that the promotion did not violate the 1982 injunction. That order prohibited promotional campaigns in which purchases were necessary in all instances; it did not preclude "the right to obtain free crown[s], tabs, or chances at some place other than the point of purchase of the beverage." Less than one month after the promotion began, of the 25,000 free cards distributed, 252 winning free cards had been redeemed. There was also evidence that Pepsi's salesmen were instructed to keep records of the free cards dispersed and to check for the availability of such cards at each store.
The aspect of Pepsi's prior promotions that led to the injunction was the unavailability of free chances. A careful reading of the language of the injunction leads to but one conclusion: that Pepsi complied in good faith with the mandates of the injunction and that Pepsi was within its rights in conducting the "Instant Cash" campaign. The judgment of the trial court holding Pepsi in contempt of the 1982 injunction is reversed, and the case is remanded for that court to enter an order to the effect that the injunction was not violated.
REVERSED AND REMANDED WITH INSTRUCTIONS.
TORBERT, C.J., and JONES, SHORES, ADAMS and STEAGALL, JJ., concur.
[1] We note that the Jefferson County Circuit Court on January 12, 1988, relied upon that advisory opinion and found that the Pepsi "Instant Cash" promotion was not a lottery and dissolved a prior injunction prohibiting it. That court found that "[the] ability to obtain the free game chance at the point of purchase in the participating stores distinguishes the fact situation in, this case from other fact situations in prior cases."