The appellant, Rex M. Henderson, was convicted by a jury for the crime of promoting gambling. His $300 fine was suspended upon his making a $300 contribution to Habitat for Humanity, and he was ordered to pay court costs and $50 to the Crime Victims' Compensation Fund. Three issues are raised in this appeal.
 I
The offense of promoting gambling is a Class A misdemeanor. Ala. Code 1975, § 13A-12-22(b). The appellant was indicted for this offense by a grand jury and was tried on the indictment in circuit court. He asserted at trial and maintains on appeal that the circuit court does not have subject matter jurisdiction of the charged offense. Specifically, the appellant argues: (1) that § 12-11-30(2) grants to the circuit court original jurisdiction of only those misdemeanors that are lesser included offenses under a felony charge or that arise out of the same incident as a felony charge, and (2) that under § 12-12-32(a) all other state code misdemeanors are within the exclusive original jurisdiction of the district court.
The determination of whether the trial court had jurisdiction of this offense requires an examination of §§ 12-11-30(2) and12-12-32(a). The examination of these sections, in turn, necessitates a review of the development of the Alabama Unified Judicial System.
In December 1973, the citizens of this state ratified a constitutional amendment revising the entire Judicial Article (Article VI) of the Alabama Constitution of 1901. *Page 408 
See Annotations to Ala. Const. amend. 328. This amendment "mandated a unified [judicial] system," Cowin Equipment Co. v.Robison Mining Co., 342 So.2d 910, 912 (Ala. 1977), "consist[ing] of a supreme court, a court of criminal appeals, a court of civil appeals, a trial court of general jurisdictionknown as the circuit court, a trial court of limitedjurisdiction known as the district court, a probate court and such municipal courts as may be provided by law." Ala. Const. amend. 328, § 6.01(a) (emphasis added).
The amendment also set forth the basic jurisdiction of each court. Section 6.04(b) provides:
 "The circuit court shall exercise general jurisdiction in all cases except as may otherwise be provided by law. The circuit court may be authorized to review decisions of state administrative agencies and decisions of inferior courts. It shall have authority to issue such writs as may be necessary or appropriate to effectuate its powers, and shall have such other powers as may be provided by law." (Emphasis added.)
Section 6.05 provides in pertinent part:
 "The district court shall be a court of limited jurisdiction and shall exercise uniform original jurisdiction in such cases, and within such geographical boundaries, as shall be prescribed by law. . . . The district court shall have jurisdiction of all cases arising under ordinances of municipalities in which there is no municipal court. . . ." (Emphasis added.)
Thus, under the new Judicial Article of our Constitution, the circuit court has original jurisdiction in all cases, criminal and civil, unless the legislature provides otherwise. In contrast, except for its jurisdiction of municipal ordinance infractions in municipalities where there is no municipal court, the district court has original jurisdiction only insuch cases as the legislature provides. The jurisdiction of the circuit court is all inclusive, although the legislature has the authority to create exceptions thereto, while the jurisdiction of the district court is, with one exception, non-existent until the legislature specifically grants it jurisdiction.
In 1975, the Alabama Legislature passed legislation implementing the new Judicial Article. See generally Act of October 10, 1975, No. 1205, 1975 Ala. Acts 2384 ("Act No. 1205"). Section 2-104(b) of Act No. 1205 (now codified at Ala. Code 1975, § 12-11-30(2)] provides, in pertinent part:
 "The circuit court shall have exclusive original jurisdiction of all felony prosecutions and of misdemeanor or ordinance violations which are lesser included offenses within a felony charge or which arise from the same incident as a felony charge, except that the district court shall have concurrent jurisdiction with the circuit court to receive pleas of guilty in felony cases not punishable by sentence of death."
1975 Ala. Acts at 2388. Section 4-106(a) (now codified at Ala. Code 1975, § 12-12-32(a)) provides:
 "The district court shall have exclusive original trial jurisdiction over prosecutions of all offenses defined by law or ordinance as misdemeanors, except:
 "(1) prosecutions by municipalities having municipal courts; and
 "(2) any such prosecution which also involves a felony offense which is within the exclusive jurisdiction of the circuit court, except as the district court is empowered to hold preliminary hearings with respect to felonies and to receive guilty pleas as provided in subsection (b) of this section."
1975 Ala. Acts at 2394 (emphasis added). Section 4-106(e)(2) (now codified at Ala. Code 1975, § 12-12-51) provides: "The district court shall have exclusive original jurisdiction of misdemeanor prosecutions for traffic infractions, except ordinance infractions prosecuted in municipal courts." 1975 Ala. Acts at 2395.
During the codification process preceding the adoption of the Alabama Code of 1975, § 2-104(b) of Act No. 1205 became §12-11-30(2) of the Code; § 4-106(a) of Act No. 1205 became Code § 12-12-32(a); and § 4-106(e)(2) of Act No. 1205 became Code §12-12-51. See 3 Legislative Manuscript, *Page 409 
Alabama Code of 1975, at 12.61, 12.69-12.70, 12.71.[1] Sections 2-104(b), 4-106(a), and 4-106(e)(2) of Act No. 1205 were transferred to the manuscript of the Code virtually verbatim. Additionally, a third subsection was inserted in the Code version of § 4-106(a). That new subsection further excepts from the district court's exclusive original misdemeanor jurisdiction "[a]ny misdemeanor for which an indictment has been returned by a grand jury." 3 Legislative Manuscript at 12.70. According to the "Summary of Changes in Codified Sections," this subsection was "added to reflect actual practice." 7 Legislative Manuscript, Appendix 1, at A. 152.
In 1977, the legislature adopted the manuscript as the Alabama Code of 1975. Act of February 15, 1977, No. 20, § 1, 1977 Ala. Acts 28, 29. See Ex parte Coker, 575 So.2d 43, 50
(Ala. 1990). In adopting the new Code, the legislature declared that "said Code shall govern completely, so far as a statute can, the subjects to which it relates." Act of February 15, 1977, § 2, 1977 Ala. Acts at 29. The new Code became effective on October 31, 1977. See id.; Ala. Code 1975, Vol. 1 at vi. At that time, the new subsection of 12-12-32(a), although not originally appearing in Act No. 1205, became law. "Any new matter . . . embodied in the Code, is, by the act adopting the Code, enacted into law." Gibson v. State, 214 Ala. 38, 43,106 So. 231, 235 (1925), quoted in Bush v. Greer, 235 Ala. 56, 59,177 So. 341, 342 (1937).
The appellant argues that § 12-11-30 limits the jurisdiction of the circuit court and that the circuit court has jurisdiction of only those matters specifically set out in §12-11-30. However, this argument is in direct contradiction of § 6.04(b), Ala. Const. amend. 328. As noted above, that section grants all-inclusive jurisdiction to the circuit court, subject to limitations imposed by the legislature. Unless the legislature has elsewhere specifically limited the circuit court's jurisdiction of a particular matter, the mere fact that that matter is not set out in § 12-11-30 does not deprive the circuit court of jurisdiction of that matter. For example, §12-11-30(2) does not specifically provide that the circuit court has jurisdiction to accept guilty pleas in capital cases; however, the circuit court may clearly accept such pleas. See §13A-5-42; Holcomb v. State, 519 So.2d 1378 (Ala.Cr.App. 1988).
There are a number of statutes, some of which were discussed above, relating to the jurisdiction of courts inferior to the circuit court. In determining whether the legislature intended to exclude a matter from the jurisdiction of the circuit court, a reviewing court must look to these statutes, as well as to § 12-11-30. See Ex parte Owens, 533 So.2d 617, 619-20
(Ala. 1988). Because all of these statutes "relate to closely allied subjects [they] may be regarded in pari materia." Stateex rel. State Board for Registration of Architects v. Jones,289 Ala. 353, 358, 267 So.2d 427, 431 (1972). "Where statutes are in pari materia they should be construed together" and "should be resolved in favor of each other to form one harmonious plan." League of Women Voters v. Renfro, 292 Ala. 128,131, 290 So.2d 167, 169 (1974).
Applying these principles and considering §§ 6.04(b) and 6.05 of the new Judicial Article, we conclude that, as applicable to state offenses, the legislature has excluded from the circuit court's original jurisdiction only: (1) those misdemeanors for which no indictment has been returned, see § 12-12-32(a)(3), and which do not involve a felony charge (i.e., they are not lesser included offenses within a felony charge and they do not arise out of the same incident as a felony), see §§12-11-30(2), 12-12-32(a)(2),[2] and (2) those misdemeanors *Page 410 
that are traffic offenses, see § 12-12-51. Where an indictment has been returned, the circuit court has concurrent jurisdiction with the district court, see § 12-12-32(a)(3), "except where the misdemeanor is a traffic infraction, in which case the district court has exclusive original jurisdiction."Wright v. State, 494 So.2d 177, 179 (Ala.Cr.App. 1986).
In the present case, a grand jury returned an indictment charging the appellant with a misdemeanor that was not a traffic offense. Consequently, the circuit court had concurrent jurisdiction of the matter with the district court and the appellant was properly tried in circuit court.
 II
The appellant contends that the indictment against him is fatally defective because it fails to allege an essential element of the offense.
The offense of promoting gambling is defined in Ala. Code 1975, § 13A-12-22(a), as "knowingly advanc[ing] or profit[ing] from unlawful gambling activity otherwise than as a player." The elements of this crime are readily apparent from the statute: (1) the activity must be done "knowingly", as that term is defined in 13A-2-2(2); (2) the activity must fall within "advanc[ing] gambling activity" or "profit[ing] from gambling activity", as those terms are defined in §13A-12-20(1), (4), and (9); (3) the gambling activity advanced or profited from must be unlawful; and (4) the actor is not a player in the activity.
By its very terms, § 13A-12-22 prohibits only the promotion of unlawful gambling activity. This third element — that the gambling activity involved be unlawful — is critical in view of the fact that legalized gambling in the form of parimutuel wagering on certain horse and dog races exists in this state. See § 11-65-28 (Supp. 1992) (permitting pari-mutuel wagering on horse races and greyhound races at authorized racing facilities). In fact, the legislature has specifically provided that the statutes defining gambling offenses "shall not apply to pari-mutuel betting at race meetings authorized by statute." § 13A-12-31. Thus, we agree with the appellant that the unlawfulness of the gambling activity involved is an essential element of the offense of promoting gambling and that that element must be alleged in the indictment. Cf. Barbee v. State,417 So.2d 611, 613 (Ala.Cr.App. 1982) (where statute defines crime of theft of property so as to "require proof of an intent 'to deprive the owner of his property,' . . . that intent to deprive is an essential element of the offense" and must be alleged in the indictment). It is the appellant's position that the indictment fails to allege this essential element.
The indictment against the appellant charges, in pertinent part, that the appellant
 "did knowingly advance or profit from promotion of unlawful gambling activity in that the said Rex M. Henderson, other than as a player, did solicit or induce persons to participate in gambling activity, to-wit: the Florida Lottery, in violation of Section 13A-12-22 of the Code of Alabama." CR. 4 (emphasis added).
The first portion of the indictment substantially tracks the language of § 13A-12-22(a), specifically alleges the essential element of the involvement of unlawful gambling activity, and is clearly sufficient to apprise the appellant of the nature of the charge. See Ex parte Allred, 393 So.2d 1030, 1032
(Ala. 1980); Holder v. State, 584 So.2d 872, 879
(Ala.Cr.App. 1991).
However, " '[a]n indictment must . . . apprise the accused not only of the nature of the offense, but also of the particular act or means by which it was committed.' "Hewlett v. State, 520 So.2d 200, 204 (Ala.Cr.App. 1987) (quotingHarrison v. State, 384 So.2d 641, 643 (Ala.Cr.App. 1980)). In alleging the particular act by which the charged offense was committed, the indictment refers to "gambling activity," further specified as "the Florida Lottery." Because the indictment clearly alleged unlawful gambling activity in setting out the *Page 411 
nature of the offense, we do not think the failure to reallege that element in the factual allegations was a fatal defect. "Reading the indictment as a whole, the accused should receive sufficient information to enable him to reasonably understand not only the nature of the offense but the particular act or acts touching which he must be prepared with his proof."Chambers v. State, 364 So.2d 416, 419 (Ala.Cr.App.), cert. denied, 364 So.2d 420 (Ala. 1978) (emphasis added). This information must appear " 'in language that is readily understood by the ordinary person.' " Hamm v. State,564 So.2d 453, 457 (Ala.Cr.App. 1989) (quoting Thatch v. State,432 So.2d 8, 10 (Ala.Cr.App. 1983)), affirmed, 564 So.2d 469 (Ala.), cert. denied, 498 U.S. 1008, 111 S.Ct. 572, 112 L.Ed.2d 579 (1990). See also Rule 13.2(a), A.R.Crim.P. These requirements were met in the instant case. The indictment, when read as a whole, clearly charges the appellant with promoting unlawful gambling activity by soliciting or inducing others to participate in the Florida lottery.
 III
As discussed in Part II, there are four elements of the offense of promoting gambling: (1) knowing conduct that (2) advances or results in profit from (3) unlawful gambling activity (4) where the actor is not a player. "It is fundamental that in a criminal prosecution the burden is on the State to prove beyond a reasonable doubt each and every element of the offense charged." Hull v. State, 607 So.2d 369, 373
(Ala.Cr.App. 1992). The appellant argues that the prosecution failed to prove the second and third elements of the offense. Our review of the record shows that the State failed to introduce evidence sufficient to establish that the activity promoted by the appellant was unlawful gambling activity.
"Gambling" is defined in § 13A-12-20(4) as "stak[ing] or risk[ing] something of value upon the outcome of a contest of chance or a future contingent event not under [the actor's] control or influence, upon an agreement or understanding that he or someone else will receive something of value in the event of a certain outcome." A lottery is a specific "unlawful
gambling scheme in which:
 "a. The players pay or agree to pay something of value for chances, represented and differentiated by numbers or by combinations of numbers or by some other medium, one or more of which chances are to be designated by the winning ones; and
 "b. The winning chances are to be determined by a drawing or some other fortuitous method; and
 "c. The holders of the winning chances are to receive something of value."
§ 13A-12-20(6) (emphasis added). See also Pepsi Cola BottlingCo. v. Coca-Cola Bottling Co., 534 So.2d 295, 296 (Ala. 1988) ("[t]he three elements of a lottery are (1) a prize, (2) awarded by chance, and (3) for a consideration"). We note that lotteries are constitutionally prohibited in this state, Ala. Const. art. IV, § 65, and that "[i]t is no defense under section 13A-12-22 relating to a lottery that the lottery itself is drawn or conducted outside Alabama and is not in violation of the laws of the jurisdiction in which it is drawn or conducted," § 13A-12-29.
The State's evidence tended to show that the appellant, a Montgomery police officer, took orders for "Florida lottery tickets" from a number of persons, traveled to Florida where he purchased the ordered "lottery tickets," then returned to Montgomery, where he distributed the "lottery tickets" to the persons who had placed the orders. While the testimony of the State's witnesses indicates that the persons placing the orders paid the appellant money for the "lottery tickets" and that they selected "numbers" for their tickets, there was absolutely no evidence offered by the State as to the mechanics of the Florida lottery. Specifically, there was no evidence that the lottery tickets represented "chances" and no evidence as to how the winning chances are determined. See § 13A-12-20(6)(a) and (c). *Page 412 
At the close of the State's case-in-chief, defense counsel moved for a judgment of acquittal, arguing:
 "There's nothing in the record in this case to say what the Florida lottery is, nothing. I don't know that the Florida lottery is a lottery defined by Alabama law. I don't even know that it is gambling activity as defined by Alabama law. And most importantly, this jury doesn't know. It was incumbent upon the State of Alabama to prove to this jury how the Florida lottery works so they could reach the factual conclusion whether it is gambling activity or not. And they didn't do that at all."
R. 52. Stating that he "d[id]n't know that there was ever any testimony about the mechanical ways [the Florida lottery] worked," the trial judge permitted the State to reopen its case to cure this defect. R. 55. However, the State called only one witness, who testified that she was "trying to win money in the Florida lottery . . . based on [the] hope that [her] numbers matched and would be picked in the Florida lottery." R. 62. This witness acknowledged on cross-examination that she did not "know how the winning numbers are selected in the Florida lottery, if there is such a thing," R. 63-64. Thus, even though the specific deficiency was brought to its attention and it was given the opportunity to cure the deficiency, the State failed to prove an essential element of the charged offense. SeeDavis v. State, 30 Ala. App. 149, 2 So.2d 328 (1941) (indicating that expert testimony regarding operation of the lottery is required to support conviction for involvement in illegal lottery); Arnold v. State, 30 Ala. App. 115, 2 So.2d 316 (same), cert. denied, 241 Ala. 245, 2 So.2d 319 (1941).
We note that the prosecutor appeared to be under the misconception that having witnesses testify that they purchased "Florida lottery tickets" was sufficient to prove that the activity involved was actually an unlawful lottery as defined in § 13A-12-20(6). See R. 54-55. However, simply referring to activity as a "lottery" without proving that that activity met the statutory definition of a lottery will not support a conviction for promoting gambling. Cf. Pepsi Cola Bottling Co.v. Coca-Cola Bottling Co., 534 So.2d at 296 (promotional activity that involved two of the three elements of a lottery, but not the third, was not a lottery and would not be enjoined).
Because the State failed to prove one of the elements of the charged offense, the judgment of the trial court must be reversed and a judgment of acquittal rendered in favor of the appellant. Burks v. United States, 437 U.S. 1, 98 S.Ct. 2141,57 L.Ed.2d 1 (1978).
REVERSED AND RENDERED.
All Judges concur.
[1] In 1969, the legislature approved "the revision, digesting and codification of all the statutes of the State of Alabama of a general and permanent nature, including all of the general acts enacted into law during the Fourth Extraordinary Session of the 1975 Legislature." Act of February 15, 1977, No. 20, § 1, 1977 Ala. Acts 28, 29. Pursuant to this legislation, the Bobbs-Merrill Company and the Michie Company were jointly engaged as the Code Commissioner to prepare a manuscript of the revision. See id., 1977 Ala. Acts at 28-29.
[2] This would include misdemeanors that are municipal ordinance violations. See § 15-8-1 ("[a]n 'indictment is an accusation in writing presented by the grand jury of the county") (emphasis added). *Page 913