PARKER, Justice.
 

 This is an appeal by the Etowah Baptist Association (“EBA”) from an order of the Etowah Circuit Court denying the EBA’s motion to intervene in a declaratory-judgment action concerning the licensing of organizations to conduct bingo games in Etowah County. Because we conclude
 
 *1268
 
 that the circuit court had no jurisdiction over the declaratory-judgment action, we dismiss the appeal.
 

 Background
 

 On September 9, 2008, the sheriff of Etowah County, Todd Entrekin (“the sheriff’), filed a declaratory-judgment action naming as defendants Coosa Entertainment Group, LLC (“Coosa”), and CBS Supply, LLC (“CBS”), two organizations that had applied for permits to conduct bingo games in Etowah County authorized by Amendment No. 506 to the Alabama Constitution of 1901 (now Local Amendments, Etowah County, § 2, Ala. Const. 1901 (Off. Recomp.)) (hereinafter “Amendment No. 506”).
 
 [1]
 

 In his complaint, the sheriff asked the Etowah Circuit Court to decide the applicable law under which the sheriffs investigation of applicants for bingo permits must be conducted. He noted that the Alabama Constitution had been amended in 1989 by Amendment No. 506 to legalize bingo in Etowah County and that Amendment No. 506 authorizes the Etowah County Commission to promulgate rules for the issuance of permits and licenses for the operation of bingo games. The sheriff further noted that Amendment No. 506 authorized the legislature to adopt laws supplemental to Amendment No. 506 and that both the Etowah County Commission and the legislature had acted on the authority provided them in Amendment No. 506.
 

 The legislature, contemporaneously with its enactment of Act No. 89-329, Ala. Acts 1989, which proposed Amendment No. 506, enacted Act No. 89-463, Ala. Acts 1989, which was later amended by Act No. 94-135, Ala. Acts 1994, as enabling legislation for Amendment No. 506. Amendment No. 506 included no definition of the word “bingo.” Both Act No. 89-463 and Act No. 94-135 define “bingo” as “that game commonly known as bingo where numbers or symbols on a card or paper sheet are matched with numbers or symbols selected at random.”
 

 The Etowah County Commission, on July 7, 2008, issued a resolution promulgating rules and regulations for the operation of “charitable machine bingo” in Eto-wah County. Section 1 of the resolution defines “bingo” or “bingo games” as follows:
 

 “(a) ‘Bingo’ or ‘Bingo Games’ shall mean any game of chance known as bingo, including any game defined as such by state or federal law (whether or not electronic, computer or other technological aids are used in connection therewith), which incorporates the following elements:
 

 “(i) the game must be played on a grid of five (5) horizontal rows intersected by five (5) contiguous squares contained within the grid;
 

 “(ii) each square in a grid must be designated by a number or other sym
 
 *1269
 
 bol contained in a collection of numbers or symbols used for playing the game;
 

 “(iii) numbers or symbols are selected by a procedure or mechanism entirely or predominately governed by chance and, as such number or symbols are selected during the playing of a particular game, the same numbers or symbols, if they are present on one or more of the squares on any grid in play, are covered or otherwise marked on such grid;
 

 “(iv) the winner or winners of a particular game are the players of those grids for which a previously designated pattern or arrangement is first covered or marked;
 

 “(v) one or more players must compete against one or another for prizes;
 

 “(vi) money may be collected from the players of bingo for the opportunity to participate in the game, and such monetary amounts may vary to reflect the value of the prize for winning a particular game, whether for participation in the whole game or a particular phase thereof, and other factors reflecting the interplay of the amount collected from each player, the size of the prize and the probability of winning; and
 

 “(vii) the prizes for winning the game can be money or anything of value with limits as to amount. To the extent that the foregoing elements are present in the game of bingo, it can be played with different kinds of equipment varying from one end of the spectrum, where traditional cards displaying the playing grids are used with tokens to cover the designated squares on the cards, to the technologically advanced end of the spectrum, where electronic devices perform the operations of the game using computers or micro-processors and interact with the human players by means of an electronic console. If the game of bingo is played on electronic devices which determine and signal the winner, such devices shall be electronically linked to ensure that multiple players are competing against each other. The prizes or evidence thereof for winning bingo games may be disbursed by the electronic devices or consoles used in playing such games at the time each game is won or on different schedules that reflect a record of wins and losses involving multiple games.
 

 “(b) ‘Machine Bingo Game’ shall mean any electronic or mechanical equipment, machine or device, or computer or other technologic hardware or device,
 

 “(i) which is installed, or is to be installed at a Machine Bingo Location and
 

 “(ii) which is used, or can be used, to play Bingo as herein defined. Machine Bingo Games includes any machine, device or hardware that assists a player or the playing of Bingo Games, broadens the participation levels in a common game and includes all of the ancillary Bingo supplies. Examples of Machine Bingo Equipment and Supplies include, but are not limited to, dispensers, readers, electronic player stations, player terminals, central computer servers containing random number generators and other processing capabilities for remote player terminals, electronic consoles capable of providing game results in different display modes, telephones and telephone circuits, televisions, cables and other telecommunication circuits, and satellites and related transmitting and receiving equipment. Machine Bingo Games shall not be
 
 *1270
 
 deemed to be for any purpose a ‘gambling device’ or ‘slot machine’ within the meaning of the Code of Alabama 1975, Sections 13A-12[-]20(5) and (10) or any other provision of law, whether now in effect or hereafter enacted. Traditional bingo played utilizing paper cards and any devices to assist in the paying of traditional bingo utilizing paper cards shall be exempt under this definition.”
 

 The sheriffs responsibility under the rules established by the Etowah County Commission was to conduct an investigation to determine the appropriateness of the issuance of licenses to applicants for bingo permits.
 

 The sheriffs complaint presented the following issue:
 

 “13. ... [PJursuant to the rules and regulations as promulgated by the Eto-wah County Commission in July 2008, [the sheriff] is required to undertake an investigation in order to ascertain and determine the appropriateness of the issuance of a license to the applicant.
 

 “14. However, the responsibility and guidelines governing the investigation and possible issuance of a permit required of the sheriff is either unclear and/or otherwise distinct and different with respect to whether or not the license is being issued as promulgated by the statutory provisions as adopted by the Alabama Legislature as compared to the rules and regulations as promulgated by the Etowah County Commission.
 

 “15. In order to properly comply with the application process and insure an appropriate and proper investigation, it is necessary that this Court declare and determine the appropriate rules, regulations, procedures and/or laws that will serve to guide your plaintiff ... as Sheriff of Etowah County, as he proceeds with this investigatory process.
 

 “WHEREFORE, PREMISES CONSIDERED, it is therefore prayed that this Court will set this matter down for hearing and upon consideration of the information and argument provided, that the Court will ascertain and determine the appropriate body of law and/or regulation that will serve to guide your plaintiff as he initiates and proceeds in the investigatory process necessitated by the submission of an application for a permit to operate bingo in Etowah County, Alabama by these defendants.”
 

 On September 10, 2008, Coosa and CBS filed motions for a summary judgment. Coosa argued that, “[a]s a matter of law, Amendment No. 506 of the Alabama Constitution controls the Sheriffs investigation in issuing the subject permits. Accordingly, any statutory legislation or local resolution that conflicts with the power of the [sheriff], set forth in Amendment [No.] 506, do not apply and should not be followed.” CBS similarly argued that “Amendment No. 506 ... controls the responsibilities and duties of the sheriff with regard to investigation and issuing permits. As a matter of law, to the extent that any other statutes would conflict, or to the extent that any resolution would conflict, the Alabama Constitution, as amended, would prevail.” The sheriff did not file a response or otherwise oppose the summary-judgment motions.
 

 On September 16, 2008, the EBA, claiming an interest in the case by virtue of the proximity of the 91 Southern Baptist churches that are its members to the proposed “electronic bingo” facilities, filed a motion pursuant to Rule 24(b), Ala. R. Civ. P., to allow it permissive intervention. It argued:
 

 “3. Article IV, § 65 of the Constitution of Alabama of 1901, prohibits lotteries or gambling in this State. The Article provides as follows:
 

 
 *1271
 
 “ ‘The Legislature shall have no power to authorize lotteries or gift enterprises for any purposes, and shall pass laws to prohibit the sale in this state of lottery or gift enterprise tickets, or tickets in any scheme in the nature of a lottery....’
 

 “The elements of a lottery which violate § 65 of the Constitution of Alabama are a prize, awarded by chance, and for consideration.
 
 Pepsi Cola Bottling Co. of Luverne, Inc. v. Coca-Cola Bottling Co., Andalusia,
 
 534 So.2d 295 (Ala.1988). According to established legal precedent, the playing of bingo has been recognized as a form of a lottery.
 
 City of Piedmont v. Evans,
 
 642 So.2d 435 (Ala.1994).
 

 “4. In 1989, the Alabama Legislature proposed Amendment No. 506 to the Constitution of Alabama legalizing ‘bingo’ games in Etowah County, Alabama for prizes or money if operated by a non-profit organization for charitable, educational or other lawful purposes. This amendment was approved by an election held on August 8, 1989 and ratified July 2, 1990 by the Alabama Legislature.
 

 “5. Amendment No. 506 to the Constitution of Alabama of 1901 (Sec. 2. Bingo) makes the operation of ‘bingo’ games subject to the provisions of any resolution by the county commission. According to this constitutional amendment, the county commission shall have the authority to promulgate rules and regulations for the issuance of permits or licenses and for operation of bingo games; provided, however, the county commission must insure compliance pursuant to said law and to certain additional provisions prescribed by the Amendment. The amendment provides that its provisions shall be self-executing, ‘but the legislature shall have the right and power by general, special or local act to adopt laws supplemental to this amendment or in furtherance of the general purposes and objectives herein set forth.’ Amendment [No.] 506,
 
 supra.
 

 “6. In 1989, the Legislature through Act No. 89-463, [Ala. Acts 1989,] enacted provisions relevant to the operation of bingo in Etowah County, Alabama. This original Act defined charitable ‘Bingo’ as being the game commonly known as bingo, where numbers or symbols on a card or paper sheet are matched with numbers or symbols selected at random. That limited definition of charitable ‘Bingo’ in Etowah County has remained unchanged since 1989. On February 24, 1994, Act No. 89-463 was amended to supplement the ... law applicable to the operation of the bingo games by qualified organizations. Pursuant to its authority to adopt laws supplemental to Amendment 506 or in furtherance of the general purposes and objectives of that amendment, the legislature again defined ‘Bingo’ in Section 2(1) of Act No. 94-13[5, Ala. Acts 1994,] as follows:
 

 “ ‘Section 2. As used in this act the following words shall have the following meanings as ascribed herein, unless the context clearly indicates otherwise:
 

 “ ‘(1) “Bingo” means that game commonly known as bingo where numbers or symbols on a card or paper sheet are matched with numbers or symbols selected at random.... ’
 

 “Section 7 of Act No. 94 — 13[5] states that it is the intention of the legislature that only qualified organizations which are properly issued permits or licenses, pursuant to subdivision (2) of this act, shall be allowed to operate bingo games.
 

 “7. On July 7, 2008, the Etowah County Commission adopted a resolution promulgating rules and regulations for the
 
 *1272
 
 operation of charitable ‘machine’ bingo in Etowah County. The rules adopted by the county commission are contrary to the definition of ‘Bingo’ stated in the 1989 Act and Section 2 of Act No. 94-13[5], as allowed by the constitutional amendment, which strictly defines ‘Bingo’ as ‘that game commonly known as bingo where numbers or symbols
 
 on a card or paper sheet
 
 are matched with numbers or symbols selected at random .... ’ (Emphasis added [in EBA’s motion]).
 

 “8. The [sheriffs] complaint for a declaratory judgment asks this Court to determine whether the term ‘Bingo’ as defined in Section 2 of Act No. 94 — 13[5] still governs the Sheriffs investigation and consideration of [Coosa’s and CBS’s] applications for a permit to operate bingo in Etowah County following the Commission’s resolution of July 7, 2008, permitting ‘charitable machine bingo’ in Etowah County. [Coosa and CBS] have moved for summary judgment asking this Court to declare, in effect, that the Commission’s resolution permitting ‘charitable machine bingo’ in Etowah County renders the provisions of Act No. 94 — 13[5], defining ‘Bingo’ as ‘that game commonly known as bingo where numbers or symbols on a card or paper sheet are matched with numbers or symbols selected at random .... ’ not applicable to the Sheriffs investigation and consideration of them permit applications.
 

 “9. Amendment No. 506 to the Constitution of Alabama did not repeal Article IV, § 65 of the Constitution of Alabama. Instead, ... Amendment No. 506 simply amended the Constitution of Alabama by allowing the lottery of ‘bingo’ as narrowly defined by the supplemental local acts to be operated legally in Etowah County by certain non-profit organizations for charitable, educational or other lawful purposes. The only form of bingo legalized by the passage of the amendment, as supplemented by the local acts, was bingo in card or paper format.”
 

 On September 18, 2008, the Etowah County Commission moved the circuit court to allow the Commission to intervene as a matter of right under rule 24(a), Ala. R. Civ. P., saying, in part:
 

 “[T]he Etowah County Commission moves the Court to enter an Order which will insure that no bingo permits may be issued to any applicant by the Sheriff of Etowah County unless and until the preconditions of the July 7, 2008, Etowah County Commission Resolution have been met and certification has been given to the Etowah County Sheriff by the Etowah County Commission of that fact.”
 

 On September 19, 2008, after a hearing, the circuit court issued an order stating that both the Etowah County Commission and the EBA lacked legal standing to intervene at that time and that each entity would be allowed to provide the circuit court with an amicus curiae brief, should it elect to do so.
 

 The EBA did not immediately appeal the September 19, 2008, order, but on September 22, 2008, it filed a motion to amend the order, citing a September 19, 2008, opinion of the Alabama Attorney General that stated that then current legislation limited bingo in Etowah County to paper bingo. Op. Att’y Gen. No. 2008-134 (“absent the passage of a new constitutional amendment or new legislation, the Eto-wah County Bingo Act limits bingo in Eto-wah County to paper bingo, not electronic bingo”). In the same motion, the EBA also argued that “[n]one of the existing parties to this declaratory judgment action takes an opposing position on whether the Commission’s regulations allowing elec-
 
 *1273
 
 tronie machine bingo are valid. With no case or controversy between the existing parties the Court lacks jurisdiction over this case.”
 

 On October 6, 2008, the EBA filed a brief in the circuit court. It argued that because the sheriff had taken no legal position and Coosa and CBS were in agreement as to the issues, there were no adverse interests in the case. Thus, the EBA argued, there was no justiciable controversy, and the circuit court lacked jurisdiction to hear the case. The EBA also argued that the effect of the position of the unopposed defendants was to challenge the validity or constitutionality of the enabling legislation, which required service of notice of that challenge upon the attorney general and an opportunity for the attorney general to be heard. § 6-6-227, Ala.Code 1975.
 
 [2]
 
 Failure to notify the attorney general of a constitutional challenge to a statute or a municipal ordinance deprives a court of jurisdiction.
 
 Bratton v. City of Florence,
 
 688 So.2d 233 (Ala.1996);
 
 Tyson Foods, Inc. v. Thompson,
 
 719 So.2d 847, 850 (Ala.Civ.App.1998), abrogated on other grounds,
 
 Ex parte General Motors Corp.,
 
 800 So.2d 159 (Ala.2000).
 

 Quoting from a December 1, 2004, press release by the attorney general that stated that it “cannot be concluded ... that just because the game is played on video consoles, it is not ‘bingo,’ “ the circuit court on October 17, 2008, ruled:
 

 “The Court finds that the Constitutional Amendment 506 that was passed by referendum on August 8, 1989 pursuant to Act 89 — [329] and later ratified is the body of law which governs the Sheriff in his investigatory process to any prospective entity seeking a permit to operate a video bingo facility. The Court’s findings are consistent with the issues presented in this lawsuit and for the Court to address issues argued by the parties seeking to intervene would require this Court to improperly extend itself beyond its legal boundaries.”
 

 The effect of the circuit court’s order is to direct the sheriff to follow the rules and regulations promulgated by the Etowah County Commission instead of the enabling act, Act No. 89-463, as amended by Act No. 94-135.
 
 [3]
 

 
 *1274
 
 The EBA timely appealed from the denial of its motion to intervene.
 

 The Appeal
 

 On appeal, the EBA presents four arguments:
 

 “I. The case does not present a justiciable controversy between the existing parties, who have no adverse interests. “II. The trial court’s judgment violates Act No. 89-463 and Act No. 94-135 of the Alabama Legislature, which define charitable
 
 bingo in
 
 Etowah County as bingo played on cards or paper.
 

 “III. The judgment in this case, which presents a challenge to the validity or constitutionality of those legislative acts, is void for failure of the parties to comply with the provisions of Ala.Code § 6-6-227 (1975), requiring service of process on the Attorney General.
 

 “IV. The trial court erred in summarily denying the motion to intervene filed by the EBA, which opposes illegal gambling on property near or adjacent to their member churches, as ‘not ripe for adjudication.’ ”
 

 EBA’s brief, at ii.
 

 It is the duty of an appellate court to consider lack of jurisdiction.
 
 Ex parte Smith,
 
 438 So.2d 766, 768 (Ala.1983).
 

 “ ‘ “[J]usticiability is jurisdictional,”
 
 Ex parte State ex rel. James,
 
 711 So.2d 952, 960 n. 2 (Ala.1998); hence, if necessary, “this Court is duty bound to notice
 
 ex mero motu
 
 the absence of subject matter jurisdiction.” ’
 
 Baldwin County [v. Bay Minettel],
 
 854 So.2d [42] at 45 [ (Ala.2003) ] (quoting
 
 Stamps [v. Jefferson County Bd. of Educ.],
 
 642 So.2d [941] at 945 n. 2 [ (Ala.1994) ]). If we determine that a complaint fails to state a justiciable claim, we are obliged to conclude that the trial court lacked jurisdiction over that complaint; such a complaint therefore would not require the filing of a responsive pleading.”
 

 Bedsole v. Goodloe,
 
 912 So.2d 508, 518 (Ala.2005).
 

 The Declaratory Judgment Act, § 6-6-220 et seq., Ala.Code 1975, is not a vehicle for obtaining legal advice from the courts:
 

 “The Declaratory Judgment Act, §§ 6-6-220 through -232, Ala.Code 1975, ‘does not “ ‘empower courts to ... give
 
 advisory opinions,
 
 however convenient it might be to have these questions decided for the government of future cases.’ ” ’
 
 Bruner v. Geneva County Forestry Dep’t,
 
 865 So.2d 1167, 1175 (Ala.2003) (quoting
 
 Stamps v. Jefferson County Bd. of Educ.,
 
 642 So.2d 941, 944 (Ala.1994) (quoting in turn
 
 Town of Warrior v. Blaylock,
 
 275 Ala. 113, 114, 152 So.2d 661, 662 (1963))) (emphasis added in Stamps). This Court has emphasized that declaratory-judgment actions must ‘settle a
 
 “bona fide
 
 justiciable controversy.” ’
 
 Baldwin County v. Bay Minette,
 
 854 So.2d 42, 45 (Ala.2003) (quoting
 
 Gulf South Conference v. Boyd,
 
 369 So.2d 553, 557 (Ala.1979)). The controversy must be ‘ “definite and concrete,” ’ must be ‘ “real and substantial,” ’ and must seek relief by asserting a claim opposed to the interest of another party ‘ “upon a state of facts
 
 which must have accrued.”
 
 ’
 
 Baldwin County,
 
 854 So.2d at 45 (quoting
 
 Copeland v. Jefferson County,
 
 284 Ala. 558, 561, 226 So.2d 385, 387 (1969)). “‘Declaratory judgment proceedings will not lie for an ‘anticipated controversy.’ ” ’
 
 Creola Land Dev., Inc. v. Bentbrooke Housing,
 
 
 *1275
 

 L.L.C.,
 
 828 So.2d 285, 288 (Ala.2002) (quoting
 
 City of Dothan v. Eighty-Four West, Inc.,
 
 738 So.2d 903, 908 (Ala.Civ. App.1999)).”
 

 Bedsole,
 
 912 So.2d at 518.
 

 In
 
 Gulf Beach Hotel, Inc. v. State ex rel. Whetstone,
 
 935 So.2d 1177 (Ala.2006), this Court said: “[T]he State’s declaratory-judgment action is, in essence, nothing more than an action against itself seeking an advisory opinion from this Court.” 935 So.2d at 1183. Gulf Beach Hotel sought and was denied intervention in the trial court. It appealed. Subsequently, the trial court, at the request of the State parties, granted Gulf Beach Hotel intervenor status. Gulf Beach Hotel then filed a petition for a writ of mandamus in this Court seeking a vacation of the order making Gulf Beach Hotel a party because, it said, the trial court lacked jurisdiction. In issuing the writ, we addressed the necessity of adverse legal interests:
 

 “This Court has recognized that a purpose of the Declaratory Judgment Act, codified at §§ 6-6-220 through -232, Ala.Code 1975, is ‘to enable
 
 parties
 
 between whom an actual controversy exists or
 
 those
 
 between whom litigation is
 
 inevitable
 
 to have the issues speedily determined when a speedy determination would prevent unnecessary injury caused by the delay of ordinary judicial proceedings.’
 
 Harper v. Brown, Stagner, Richardson, Inc.,
 
 873 So.2d 220, 224 (Ala.2003)(some emphasis added). Further, ‘[w]e have recognized that a justiciable controversy is one that is “ ‘definite and concrete, touching the legal relations of the
 
 parties in adverse legal interest,
 
 and it must be a real and substantial controversy admitting of specific relief through a [judgment].”’
 
 MacKenzie v. First Alabama Bank,
 
 598 So.2d 1367, 1370 (Ala.l992)(quoting
 
 Copeland v. Jefferson County,
 
 284 Ala. 558, 561, 226 So.2d 385, 387 (1969)).’
 
 Harper,
 
 873 So.2d at 224 (emphasis added). Thus, the Declaratory Judgment Act does not ‘ “ ‘empower courts to decide ... abstract propositions, or to give
 
 advisory opinions,
 
 however convenient it might be to have these questions decided for the government of future cases.’ ” ’
 
 Bruner v. Geneva County Forestry Dep’t,
 
 865 So.2d 1167, 1175 (Ala.2003) (quoting
 
 Stamps v. Jefferson County Bd. of Educ.,
 
 642 So.2d 941, 944 (Ala.1994), quoting in turn
 
 Town of Warrior v. Blaylock,
 
 275 Ala. 113, 114, 152 So.2d 661, 662 (1963)) (emphasis added in Stamps).”
 

 935 So.2d at 1183. We concluded:
 

 “[I]t is inarguable that the State’s declaratory-judgment complaint does not allege any controversy between
 
 parties
 
 whose legal interests are adverse. Instead, it reflects only the State’s own uncertainty concerning the legality of the proposed transaction between the Department and Auburn University. While it might be convenient for this Court to address the issues raised by the State, this Court is not empowered by the Declaratory Judgment Act to give advisory opinions, and it will not do so.”
 

 935 So.2d at 1183.
 

 Here, Coosa and CBS each filed a motion for a summary judgment ordering the sheriff to apply the rules and regulations adopted by the Etowah County Commission regarding Amendment No. 506 in his investigation of applicants for bingo licenses. The fact that the sheriff did not oppose Coosa’s and CBS’s motions for a summary judgment strongly indicates that he acquiesced in the requested judgment or, at least, that he had no preference in the standard to be used. As CBS said in its brief, “Sheriff Entrekin takes no particular position in this lawsuit.” CBS’s brief, at
 
 *1276
 
 22-23. The sheriffs lack of a position was similar to that of “the Superintendent of Banks [who] had ‘no position to take’ in this suit.”
 
 State ex rel. Baxley v. Johnson,
 
 293 Ala. 69, 73, 300 So.2d 106, 109 (1974). In
 
 Johnson
 
 we said: “We are convinced that this lawsuit is a sham, contrived to secure an advisory opinion ... and that it presented no justiciable controversy between the parties.” 293 Ala. at 72, 300 So.2d at 109.
 

 We agree with the attorney general, who has filed a motion for status as a party under Rule 44, Ala. R.App. P., to respond to constitutional questions, and a brief as amicus curiae, which he asks to be treated as the brief of a party if this Court grants his motion under Rule 44. In his brief, the attorney general argues, as does the EBA, that there was no justiciable controversy in the circuit court.
 

 “ ‘The action must be adversary in character, that is, there must be a controversy between the plaintiff and a defendant, subject to the court’s jurisdiction, having an interest in opposing his claim. Unless the parties have such conflicting interests, the case is likely to be characterized as one for an advisory opinion, ... and hence not justiciable.’
 

 “Fenn v. Ozark City Schools Bd. of Educ.,
 
 [9 So.3d 484, 486 (Ala.2008),] quoting
 
 Ex parte State ex rel. James,
 
 711 So.2d 952, 960 (Ala.1998).
 

 “There was no justiciable controversy below because the only parties allowed by the circuit court (Sheriff Entrekin, CBS Supply[, LLC], and Coosa Entertainment [Group, LLC]) did not have opposing interests in the question presented; i.e. whether Amendment 506 gives primacy to the Legislature’s enabling act or the Etowah County Commission’s rules and regulations.
 

 “From day one, the [sheriff] ... expressed no opinion or interest either way. At the hearing below [he] all but admitted he was simply seeking a non-justiciable ‘advisory opinion.... ’
 

 “The allegedly competing Defendants ... filed virtually identical motions for summary judgment in favor of giving constitutional primacy to the County Commission’s rules and regulations.... Sheriff Entrekin never took the opposing position (or any position).”
 

 Attorney general’s amicus curiae brief, at 12-13. The EBA and the attorney general argue that the circuit court never acquired jurisdiction because there was no justicia-ble controversy before it. We agree with this assessment, and we therefore vacate the judgment of the circuit court, which had no jurisdiction to decide the case in which no justiciable controversy existed.
 

 Conclusion
 

 The purported declaratory-judgment action brought by the sheriff presented no justiciable controversy and should have been dismissed on that basis. 'Accordingly, we vacate the circuit court’s judgment entered on October 17, 2008, and we dismiss the case and the appeal. We also deny the motion of the attorney general to be afforded party status under Rule 44, Ala. R.App. P.
 

 MOTION OF THE ATTORNEY GENERAL DENIED; JUDGMENT VACATED; CASE DISMISSED; AND APPEAL DISMISSED.
 

 COBB, C.J., and LYONS, WOODALL, STUART, and SMITH, JJ., concur.
 

 BOLIN, MURDOCK, and SHAW, JJ., concur in the result.
 

 [1]
 

 . Amendment No. 506 provides, in pertinent part:
 

 "The operation of bingo games for prizes or money by certain nonprofit organizations for charitable or educational purposes shall be legal in Etowah county, subject to the provisions of any resolution by the county commission. The county commission shall have the authority to promulgate rules and regulations for the issuance of permits or licenses and for operation of bingo games; provided, however, the county commission must insure compliance pursuant to said law and the following provisions:
 

 [[Image here]]
 

 "The provisions of this constitutional amendment shall be self-executing, but the legislature shall have the right and power by general, special or local act to adopt laws supplemental to this amendment or in furtherance of the general purposes and objectives herein set forth."
 

 [2]
 

 . Section 6-6-227, Ala.Code 1975, provides:
 

 "All persons shall be made parties [to the declaratory-judgment action] who have, or claim, any interest which would be affected by the declaration, and no declaration shall prejudice the rights of persons not parties to the proceeding. In any proceeding which involves the validity of a municipal ordinance, or franchise, such municipality shall be made a party and shall be entitled to be heard; and if the statute, ordinance, or franchise is alleged to be unconstitutional, the Attorney General of the state shall also be served with a copy of the proceeding and be entitled to be heard."
 

 [3]
 

 . In an amicus curiae brief filed with this Court, the Foundation for Moral Law described the implication of the circuit court's order:
 

 "The trial court's paltry analysis below implies that the two legal provisions are in conflict, with the consequential result that Amendment 506, as a constitutional provision, prevails over the statute [Act No. 89-463]. The court below issued this conclu-sory ruling without the benefit of an explanation of the nature of the supposed legal conflict or how the court arrived at its decision. (C. 145-146). To find that the two laws conflict, however, the court had to make the assumption that the allowance for 'bingo' in [Amendment 506] was somehow broader than the definition of the same word supplied in the same year in the enabling statute. To sustain this logic the court would have also had to assume that the Legislature approved for the ballot an expansive and evolving constitutional definition of 'bingo' that included all its future forms (electronic, video, machine, etc.) and in the same year passed the enabling act with the traditional definition of 'that game commonly known as bingo' played 'on a
 
 *1274
 
 card or paper sheet.' Such unstated assumptions run counter to the rules of interpretation and common sense.” Foundation for Moral Law's brief, at 7.